IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

RECEIVED AND FILED
CASHIER

2014 APR -2 AM 11: 05

CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.

| | | |
|---|---|---|
| ARTURO CASTRO GUERRA , | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL NO. |
| V. | ) | COMPLAINT: 14-1280 SEC |
| | ) | |
| FIRST BANK PUERTO RICO CORPORATION; | ) | |
| ATTNY JORGE E PEREZ CASELLAS | ) | FALSE CLAIMS ACT  31 U.S.C.A.  §3729 |
| PREFERRED MORTGAGE CORPORATION; | ) | |
| CAPITAL TITLE SERVICES, INC.; | ) | TRUTH IN LENDING  15 U.S.C.A.  §1601 |
| TITLE SECURITY GROUP, INC | ) | |
| | ) | FEDERAL HOME LOAN MTG |
| | ) | MORTGAGE      12 U.S.C.A. §1454 |
| | ) | |
| Defendants; | ) | |
| | ) | |

**COMPLAINT**

**TO  THE  HONORABLE  COURT:**

COMES NOW, the Plaintiff, Arturo Castro Guerra, through the undersigned attorney and
respectfully states and prays:

RECEIPT # PLK00025527
AMOUNT: 400

APR - 1 2014

CASHIER'S SIGNATURE

**I.          NATURE AND SUMMARY OF ACTION**

This is an action for declaratory and injunctive relief, for compensatory and punitive

damages, due to the violation of statutory rights of the plaintiff by defendants, guaranteed by

the Constitution and laws of the United States and Puerto Rico. The plaintiff was the subject of

deceptive real estate practices, of false disclosure and misrepresentation in the purchase of a

resident property sold by First Bank PR Corporation.  These false misrepresentations and lack of

full disclosure during the purchase have affected other parties in this lawsuit including  FHA-

HUD, as well as the  owner/creditor of  this  mortgage  note  -  the  United  State  Federal

Government agency GNMA – FHA Loan # 13-5444.

On **November 29, 2005**, First Bank PR Corp. required a document to record that a house structure was located on the property. **A notary, Francisco Diaz Herrero** (deceased) prepared a document known as **"Acta de Edificacion", "edification act".** The notary personally went to this property and _observed_ a **900** sq./ft. _house_ made of **wood,** with a **zinc roof**. _The wood house was fully visible_. The wood house had years of termite damage. **Luis Alfredo Hernandez Garay** had originally purchased this property for the amount of **$6,000.00** on April 15, 1999.  There was **no** record of a house structure at this property.  Notary Francisco Diaz Herrero placed a value of **$36,000** for this property for the property registrar's office. The notary verified the existence of this structure and identified this as a wood house with a zinc roof of 900 sq.  The "Acta de Edificacion" was prepared on November 29, 2005 and was officially recorded in the property records registry as a journal entry _# 972_ on December 30, 2005. The full-notarized document was obtained by the plaintiff at the Notary Archives of San Juan_. Reference : Exhibit #1  (pg. 26 – 31);  Exhibit . #2 (pg. 32 – 34);  Exhibit . #5 (Pg. 37-39);  Exhibit . # 6  (pg. 40)_.

On December 16, 2005, two weeks later, this property was sold by Luis Alfredo Hernandez Garay and was purchased by **Emiliano Rosario Cepeda** for the amount of **$90,000.00**.  On the same day, **First Bank PR Corp**. granted a mortgage for the amount of **$88,200.00.** **First Bank PR Corp.** provided the buyer with a construction loan, for the difference **$88,200.00** and **$36,000.00** or **$52,200.00** to make improvements. Buyer did not request a demolition permit, nor did buyer demolish the 900 sq. house. Instead, buyer plastered the wood infested termite house inside and out with cement. Buyer plastered the rooftop with cement. Buyer added a side garage and converted this into a three (3)-unit rental property. The house was **still** a wood infested house with termites with a zinc roof. First Bank Corp. The _"Acta de Edificacion",_ the purchase contract and the mortgage were all recorded on _December 30, 2005_

with journal entry **_#972_**, **_#973_** and **_#974_** by attorney Frederick James Baraga Huyke, of the law firm Latimer Biaggi, the outside legal counsel for First Bank Corp. . **_See Exhibit # 5 (pg. 37-39)._**

First Bank PR Corp., not only loaned the buyer with a substantial loan of $52,200.00 for improvements to this property with full knowledge that this house was a termite infested wood house with a zinc roof.  First Bank PR Corp. provided false disclosure, and failed to fully disclose this was a termite infested wood house with a zinc roof during the sales process when this information was at their disposal since 2005. This is an example of **_toxic real estate_** in the portfolio of the bank. First Bank PR Corp. provided false disclosure, and failed to provide full disclosure to both real estate appraisers, to the FHA inspector, to the title insurance company, to the mortgage originator, Preferred Mortgage Corp., to the federal government agencies FHA/HUD, /GNMA, and to the buyer – the Plaintiff.  The house is **_unsafe_** to live in. The house is in severe condition, a total loss in need of demolition, and replacement of the structure.

II.                            **JURISDICTION AND VENUE**

This action is brought pursuant to the Fourteenth Amendment, Section 1. Citizens of the United States (Equal Protection of the Laws Clause) of the United Constitution,  Federal question 28 U.S.C. § 1331.  Plaintiff further invokes supplemental jurisdiction to hear and decide claims arising under the laws of the Commonwealth of Puerto Rico, and under Torts Law of Puerto Rico, Art. 1802, Civil Code of Puerto Rico, 31 L.P.R.A. § 5141; the Truth in Lending Act, 15 U.S.C.A. § 1601; the False Claims Act; 31 U.S.C.A. § 3729; and violations to the Federal Home Loan Mortgage Corporation under 12 USCA § 1454 et seq.  The creditor of this property is the United States Federal Government – FHA HUD / GNMA; FHA loan # 13-5444. Defendant alleges damages exceeding $75,000.   All defendants have their place of business within in the Commonwealth of Puerto Rico.

III.                             PARTIES

1.   Plaintiff, Arturo Castro Guerra, is a citizen of the Commonwealth of Puerto Rico and the United States of America.  Plaintiff is an accountant and owner of the homestead property.

2.   Defendant, First Bank Puerto Rico Corporation, is a duly organized corporation, created and/or authorized to do business within the Commonwealth of Puerto Rico, and who for the period stated in this complaint was the previous owner of the property purchased by the plaintiff. First Bank Puerto Rico Corp herein described as First Bank PR Corp.

3.   Defendant, Attorney Jorge Perez Casellas, outside legal counsel for First Bank PR Corp. who conducted the required legal research and prepared the "purchase contract," "Escritura de Compraventa" for this transaction.

4.   Defendant, Preferred Mortgage Corporation, is a duly organized corporation, created and/or authorized to do business within the Commonwealth of Puerto Rico, and who for the period stated was the mortgage processing company that processed this 30 year mortgage loan for FHA-HUD and the note payable.

5.   Defendant, Capital Title Services, Inc., is an entity, organized and/or authorized to conduct insurance business with the Commonwealth of Puerto Rico, and who for the period stated was the Title Company who conducted the property records search for the property purchased.  Both Capital Title Services and Title Security Group occupy in the same address.

6.   Defendant, Title Security Group, Inc. is an entity, organized and/or authorized to conduct title services and/or insurance business within the Commonwealth of Puerto Rico, and who for the period stated was the Title Company -- property search for the property purchased.

7.   Investor, Housing and Urban Development / FHA, and GNMA are Federal Government agencies who for the period stated in this complaint authorized/approved/owns

the mortgage financing, the mortgage insurance, as well as the pending/undisbursed home improvement loans 203(K) for the property purchased; FHA loan # 13-5444.

IV.                    FACTUAL ALLEGATIONS

8.    Plaintiff Arturo Castro Guerra began searching to purchase a homestead property October 2012.  Plaintiff was able to locate a detached home with a *garage* at 283 Calle Julio Vizcarrondo, Santurce, Puerto Rico, which belonged to First Bank PR Corporation and was for sale on January 2013 by First Bank Corp. on their real estate web site.

9.    Plaintiff contacted First Bank Corporation regarding this property in January 2013. The First Bank Realtor – Sky Realty in January 2013, gave plaintiff a tour of this property. Plaintiff was provided with a detailed appraisal report by First Bank representative Adalberto Navarro prepared for First Bank PR Corp. by certified appraiser Marlin Barreto dated September 12, 2012.  Plaintiff inspected the property several times and studied the detailed appraisal report for several weeks before deciding on the purchase.  The appraiser report from First Bank PR Corp. is very detailed and indicates the *house structure*, *the roof*, *the walls*, *floors* are made of *concrete* and of *reinforced concrete*; a listing of comparable properties, valuations and concrete construction.

Plaintiff relied upon the detailed appraisal report information provided by First Bank PR Corp. to accept the purchase of the property.  All appraiser / inspection reports are available.

10.    This property had been a commercial rental property, subdivided into (3) three rental units, with separate entrances.  First Bank PR Corp. repossessed this property in 2010 when the owner failed to make payments. First Bank PR Corp. had provided an *$88,200* mortgage in *December 2005* for this property to **Emiliano Rosario Cepeda** who defaulted on payments.

11.   Plaintiff signed an option to purchase this property February 22, 2013 with First Bank PR Corp. and provided a deposit of $2,750.00. The purchase price was $55,000. First Bank PR Corp. referred plaintiff to Preferred Mortgage to process the loan origination with FHA-HUD. For unknown reasons at the time, First Bank PR Corp. did not want to generate the mortgage loan on this property as they had done previously in 2005, nor hold it in their real estate inventory portfolio.

12.   Plaintiff requested access to the property for repair appraisals. First Bank PR Corp. and Sky Realty provided a key to enter the property. The option to purchase contract specifically states that plaintiff *could not make repairs, alter the physical condition, remove interior partitions, knock walls or make any changes to the physical structure of property until the final sale had taken place.* Plaintiff has provided photographs before and after purchase: *__Exh 7 – 19.__*

13.   First Bank PR Corporation was fully aware that plaintiff would finance this property through FHA and would add $7,836.00 in FHA repair program funds 203(K) as part of the financing to purchase this property. Repairs scheduled for this property were for the removal of interior partitions, iron fences, install plumbing, replace the kitchen, make bathroom repairs, and replace the nine (9) windows and two (2) doors, to make it a *livable* residential property.

14.   On March 2013, Plaintiff informed Preferred Mortgage of intent to remove the interior partitions of the rental apartments, eliminate two (2) separate entrances, open the carport garage to fit (2) cars, and convert the property into an open space for residential purposes. Preferred Mortgage contacted FHA *certified Inspector Juan Rivera* from De Diego Group to inspected this house and determine if these interior partitions could safely be removed without affecting the house structure. The FHA inspection was completed on Saturday, March 23, 2013. FHA inspector Juan Rivera issued an approval report indicating the interior partitions could safely be removed without affecting the structural soundness of the property. Plaintiff

was present when FHA inspector Juan Rivera examined this property. This inspection report is part of the appraisal report conducted by Mario Carbia.

15.    Preferred Mortgage hired real estate appraiser Mario Carbia to inspect this property and provide a detailed appraiser report.  This property was appraised for the amount of  $105,000.  The property land value was $23,750, and the structure value was the difference $81,250.00.  Appraiser Mario Carbia inspected the property several times and released the final appraisal report to Preferred Mortgage on March 27, 2013.  This inspection report reveals the house structure and roof are made of *concrete*, and *reinforced concrete*.

16.    Prior to final purchase, this property had been inspected by First Bank contract appraiser Marlin Barreto in September 2012, by FHA inspector Juan Rivera of De Diego Group, by Mario Carbia during March 2013 and by plaintiff several times.  No unusual severe defects were noted.  Preferred Mortgage notified final approval of loan closing for April 30, 2013.  The loan approval process was very thorough, very detailed and very lengthy.

17.    First Bank PR Corp., during the entire sales process, *never* informed nor provided *Full Disclosure* that this dwelling was in fact a termite infested wood house *plastered* with cement, with a zinc roof *plastered* with cement.  This was not disclosed to the two (2) appraisers who prepared appraisal reports in 2012 and 2013, nor to FHA inspector, nor to Preferred Mortgage, or to Plaintiff.  Note:  *Plaintiff would have to remove interior partitions and punch holes on the side of the house to make these discoveries.  Exhibits 7 through 19 (pg. 40 – 53).*

18.    Two weeks prior to the closing, scheduled for April 30, 2013, Plaintiff stored nine (9) solid wood windows and two (2) solid wood doors inside the house carport garage for the repair project and changed one of the padlocks for security.  Neighbor had informed Plaintiff that other persons living in the same street had the same keys to enter the house.  A maintenance person from First Bank broke the padlock, replaced it with another First Bank  PR

7

Corp. padlock and took the two (2) wood doors and the nine (9) windows without prior notification to either First Bank PR Corp. or to the Plaintiff. On April 30, 2013 the day of the closing, Plaintiff discovered these items were missing and was informed by Adalberto Navarro from First Bank PR Corp. that the maintenance person had admitted to taking this property. Plaintiff contacted First Bank PR Corp. and requested many times that the two (2) doors and the nine (9) windows be returned. A police report had to be filed. To this day, the (2) doors and the (9) windows have never been returned. The estimated replacement cost of this property is $3,000.00. *Exh. 19.*

19.    The purchase transaction of this property was completed on April 30, 2013. Plaintiff hired a construction worker to remove the interior partitions, remove the front left bathroom and remove the entire acoustic ceiling of the house. Eight days later the construction worker notified the Plaintiff that upon removal of these materials inside the house, the worker discovered the house was in fact constructed of wood walls and a zinc roof plastered with cement, all with heavy termite infestation on the wood. The condition of the roof and walls is of severe damage. The weight of the roof is being supported by *one* (1) wood beam. The roof structure is unsafe, in heavy deterioration and under danger of collapse. The house structure is *UN repairable* and requires *demolition*. No further repairs have been made on this structure pending full inspection by FHA – HUD. *Exhibits  13 to 18,  (pg. 47 – 52).*

20.    Plaintiff notified Preferred Mortgage by May 10, 2013 this was a wood house plastered with cement. In Puerto Rico local banking mortgage and FHA regulations *prohibit* the underwriting of a 30-year mortgage on a house constructed of wood and zinc. The value of a wood and zinc structure does not meet financing guidelines of *80% of market value rule.* The mortgage underwritten by Preferred Mortgage is a 30-year mortgage on a wood and zinc house.

This mortgage does not comply with local banking regulations, the property is severely overvalued. The federal government - GNMA is the creditor owner of this note payable.

21.   The total appraisal value of this property done on march 2013 by Mario Carbia for Preferred Mortgage is $105,000.00.   The structure is valued at $81,250.00 in the appraisal report. The structure requires demolition.  What remains is the land valuation of $23,750.00. In the appraisal report. The cost of demolition is estimated at $ 25,000.00. This expense would cause the property into negative equity.  The property is a loss of ($105,000.00), not including the replacement cost, and other costs and expenses.

22.   Plaintiff has _not_ been able to live in this house. The house is unsafe, and requires demolition. Plaintiff has had to stay for an extended time in the house belonging to his ex-wife, while searching for a new place to live.  Plaintiff had to store his furniture and belongings in a storage place at his expense. Plaintiff has been fortunate to find a month-to-month rental place to live, at a Synagogue in Comerio since August 2013.  Plaintiff is paying the monthly mortgage for this property, and is also paying rent and substantial transportation costs. This house situation has caused severe hardship and mental anguish for the Plaintiff.

23.  On November 2005, a legal document was required to show a structure existed on this property. First Bank PR Corp. was in the process of providing mortgage financing for this property.  Property records revealed that Luis Alfredo Hernandez Garay had purchased this lot for _$6,000_ on April 15, 1997. There _is no_ house structure recorded on this lot at the property registrar or in the property tax agency CRIM.

24. On November 29, 2005 – Attorney Francisco Diaz Herrero (now deceased) prepared a legal document known as "Acta de Edificacion" or edification act to show a structure on this lot. Attorney Herrero conducted a visual inspection and observed a house made of wood with a zinc roof and a small rear portion of the house in cement.  The house measured 900 sq./ft.  This

is the original source document and the only document referred thereon with the full legal description consisting of 4 pages. All subsequent legal documents refer to this same legal description. This property was valued at _$36,000_ in November 2005.  It was assigned a property journal entry (#972) by the property registrar.

25.  On December 16, 2005 the seller, _Luis Alfredo Hernandez Garay_ sold this property to Emiliano Rosario Cepeda for _$36,000_, and First Bank PR Corp. provided a construction loan for _$52,200_ which became a first mortgage of _$88,200._ It was assigned a property journal entry (#973) by property registrar.  **_Exhibit # 5 (pg. 37 – 39)._**

26.  On December 16, 2005 First Bank PR Corp. provided a 30-year mortgage to Emiliano Rosario Cepeda for _$88,200_.  The _lawyer Frederick James Baraga Huyke_ of the law firm _Latimer Biaggi,_ the outside legal counsel for First Bank Corp. prepared this document. It was assigned property journal entry (#974) by property registrar.

27. On _December 30, 2005_, Attorney Huyke, of the law firm Latimer Biaggi, the legal counsel for First Bank Corp. presented all three (3) documents – _"Acta de Edificacion"_ (#972); the _purchase contract_ (#973); and the _mortgage_ ( #974) to the property registrar of San Juan.

28.  On _January 24, 2006_ the property registrar of San Juan recorded a short description known as a journal entry of each document presented and returned all three (3) documents to the law firm Latimer Biaggi, the legal counsel of First Bank Puerto Rico.

29.   First Bank Puerto Rico Corp. provided a mortgage to Emiliano Rosario Cepeda for _$88,200_ on December 2005. The value of the property at the time according to Attorney Francisco Diaz Herrero (now deceased) was _$36,000_.  The difference of _$52,200_ would be a _construction loan_. First Bank PR Corp. would have substantial information on this property such as appraisals, the Acta de Edificacion, construction loan disbursements, inspection reports among other information on this property.

30.   First Bank Puerto Rico Corp. provided a 30-year mortgage for a wood house with a zinc roof to Emiliano Rosario Cepeda.  This is a violation of mortgage regulations.

31.   Emiliano Rosario Cepeda was given a construction loan for $52,200 in December 2005.  Cepeda did not demolish this 900 sq. ft. house.   Instead, Cepeda *plastered* a wood infested termite house inside and outside with cement. Cepeda *plastered* the rooftop with cement. Cepeda added a small covered garage and converted this into a three (3)-unit rental property.  The house was still a 900 sq. ft. wood infested house with termites and a zinc roof.

32.   On December 28, 2010, First Bank Corp. repossessed this property from Emiliano Rosario Cepeda.  A judgment was recorded for $83,320.  Attorney Eduardo J. Navarro Pluguez conducted the legal research and work from the law firm Latimer Biaggi.  Latimer Biaggi *is* the law firm that handles the real estate and legal issues for First Bank Puerto Rico Corp.

33.   On April 2013, First Bank Puerto Rico hired Attorney Jorge Perez Casellas who is *NOT* from the law firm Latimer Biaggi.  Attorney Perez Casellas has an office at First Bank PR Building on the 7th floor. Latimer Biaggi has an office at First Bank Building on the 12th floor. Attorney Perez Casellas prepared the legal research and the sales contract for this closing.  The legal documents, which include the Acta de Edificacion, the mortgage, the prior purchase contracts for 2005 and 2010 were all available at the Latimer Biaggi law firm for Attny. Casellas.

34.   As of April 2013, Preferred Mortgage discovered that there was *NO* structure recorded in property tax records – CRIM.  The contract prepared by Attorney Perez Casellas reveals a property tax number of 79-041-073-349-17-998. Accordingly, the property is only valued at *$5,000* with *NO* structure at CRIM. The "*Acta de Edificacion*" is the *only* legal document which reveals that a structure does exists on this property in 2005.

35. Although property dimensions had changed when the small covered car garage was added, the legal description remained the same *900* sq./ft. house as originally prepared in December 2005 by Attorney Diaz Herrero (now deceased).

36. Attorney Perez Casellas reverted back to the original legal description of the *900* sq./ft. house when the sales contract was prepared.   Again, the original legal description recorded in the *"Acta de Edificacion"* clearly shows the structure is a wood house with a zinc roof in 2005.

37. Attorney Perez Casellas failed to provide "Full Disclosure" and misrepresented the facts in the contract.  All real estate documents prepared in 2005 for this property reveal the same original legal description of a *900* sq./ft. house, which are obtained from the original document *"Acta de Edificacion",* without Full Disclosure, that this was a ***wood house with a zinc roof****.* There has been a chain of misrepresentations and falsity from First Bank Puerto Rico Corp., law firm Latimer Biaggi, and Attorney Perez Casellas.  Attorney Perez Casellas can not claim the implied warranty "as is" when the parties involved have failed to provide "full disclosure". They have hidden information, have provided false information and have acted with falsity for this transaction.

38. First Bank Puerto Rico Corp. provided false misrepresentations in order to sell this property and obtain the FHA – HUD check (in effect a federal claim) for this property.  In effect, the ***Federal Government*** is the owner of this loan – FHA Loan # 13-5444 that was obtained through these false misrepresentations and lack of full disclosure.  The creditor of this loan is GNMA – the Federal Government. These failures of Full Disclosure are in violation of the Truth in Lending Act, 15 U.S.C.A. § 1601, et al., the False Claims Act; 31 U.S.C.A. § 3729, et al., and Federal Home Loan Mortgage regulations;  12 U.S.C.A.  § 1454, et al.

39.   Plaintiff has been making monthly payments on this property from the start to prevent foreclosure.  This property structure is worthless and unsafe. The roof could collapse. The property goes into negative equity when the cost of demolition  $25,000 is factored in.  The entire FHA loan is therefore worthless.  The entire loan transaction is impaired.

40.   (A).  The total damages for this property due to a lack of structure are as follows:

| | | |
|---|---|---|
| a. | Purchase price of property – Line 120 HUD -1 Stmt. | $ 70,632 |
| b. | Construction worker and removal of debris | $ 2,800. |
| c. | Consulting fees | $ 3,000 |
| e. | Monthly mortgage expenses – 12 months | $ 4,500 |
| f. | (2) doors & (9) wood windows stolen | $ 3,000 |
| | Total Expense – through April 2014 | $ 83,932 |
| (B) | *Demolition* of house structure | $ 25,000 |
| | *Govt. Permits* required – 6 to 12 months approval | |
| (C) | Replacement of Structure – estimate | |
| | 1,200 sq./ft.  @  $75 sq./ft. | $ 90,000 |
| | Total | $ 198,932 |

41.   Plaintiff has a limited amount of time to file a claim for damages to prevent the passing of the Statute of Limitations, which expires April 30 2014.

42.   **Conditions of this property and loan are of impairment.  Property requires demolition. Plaintiff requests an injunction from the court to stop the monthly mortgage payments until damages are considered and this legal issue is resolved.**

43.   Obtaining an FHA mortgage loan is a long, detailed process.  There are several parties included in this chain of events that include the loan processor, the appraisers, the FHA inspector, the credit reports, the FHA, the lawyers and the buyer among others.  When this chain breaks down, as in this case, and First Bank PR Corp. (seller) and their legal representatives fail to fully disclose information, which may be detrimental to the sales process, it corrupts the entire sales transaction.  Lack of full disclosure and lack of faithful diligence in this process does not protect First Bank Corp. with the "as is" warranty protection from the UCC.  The *"as is"* warranty is *not* an absolute protection or defense in the sales process.  It does not protect First Bank PR Corp. or their legal representatives when they have knowingly withheld information,

which is detrimental to the prospective sale of a property they own.  Lack of _Full Disclosure_ by First Bank PR Corp. and or their legal representatives represents a conduct of falsity through out the entire sales process. It corrupts the entire sales transaction and is detrimental to all parties involved.  First Bank Corp. provided a mortgage of _$88,200_ for a property valued at _$36,000_ and constructed of zinc and wood in December 2005.    First Bank PR Corp. had substantial information about this property, which was kept secret and not _Fully Disclosed_ to all parties during the sale transaction of 2013.  The information not fully disclosed is of substantial detriment.  Had parties known of this detrimental information, this property would not have qualified or even met the bare minimum FHA-HUD specifications.  The misrepresentations and lack of full disclosure are fraudulent.  The _'as is'_ clause does not protect the seller when _fraudulent misrepresentations_ are made.  First Bank PR Corp. has created a claim with the federal government FHA–HUD for False Claims.

44.  Plaintiff has secured the professional services of a Civil Engineer who has inspected the property. The assessment is that this structure is unsafe, in severe condition and requires demolishment.

### FIRST CAUSE OF ACTION

45.  Plaintiff repeats and re alleges each and every allegation contained in paragraphs 1 through 44 of this complaint. Defendant First Bank PR Corporation has provided false certifications on the appraisal and the purchase option contract in violation of the Truth in Lending Act, failure of Full Disclosure, in violation of Consumer Credit Protection 15 USCA § 1604 et seq. and violation of  FHA – HUD loan bank regulations for institutions insured by the FDIC 15 USCA et seq. .

### SECOND CAUSE OF ACTION

46.  Plaintiff repeats and re alleges each and every allegation contained in paragraphs 1 through 44 of this complaint.  The acts and conduct of defendants constitute violations of the False Claims Act  31 USCA § 3729,  § 3730 et seq. which involve the payment by the U.S. Government under the Federal Housing Administration for what constitute a "claim" within the meaning of the False Claims Act 31 USCA § 3729.

### THIRD CAUSE OF ACTION

47. Plaintiff repeats and re alleges each and every allegation contained in paragraphs 1 through 44 of this complaint.  The acts and conduct of the defendants constitute a violation of

residential mortgages which are deemed by the Federal Home Loan Mortgage Corporation to be of such quality, type, and class to meet purchase standards by private mortgage investors, and a principal balance of the mortgage at the time of purchase exceeds _80%_ of the value of the property securing the mortgage under  12 USCA § 1454 et seq., and 12 USCA § 1717, 12 USCA § 1719. Civil Penalties apply for the submission of false information under 12 USCA  § 1721 and § 1723 et seq. .  FHA – HUD/ Atlanta office has informed plaintiff of  HUD penalties for not making improvements per the 203(k) program.  FHA has yet to inspect this property, even after several written requests have been presented at the local FHA HUD  PR office.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that the Honorable Court enter judgment in favor of plaintiff, allowing the following relief, jointly and severally, against all defendants:

A.  A declaration that the acts and omissions by defendants complained of, were illegal, unlawful, and fraudulent.

B.  Compensatory damages for the demolition of the structure and replacement of the structure, and treatment of the current structure as a total loss and part of damages, of **$200,000**.

C.  Compensatory damages for emotional pain, mental anguish and related suffering to the plaintiff by the actions of the defendants, in an amount no less than *$100,000.*

D.  Punitive damages in an amount no less than *$ 200,000.*

E.  Reasonable attorneys fees and costs, as provided by law.

F.  Pre-judgment and post judgment interest.

G.  Such other and further relief as may appear just and reasonable.

H.  Impairment of loan and Injunction to stop payment of this mortgage note until this legal case is resolved.

Respectfully submitted in San Juan, Puerto Rico, this ____2____ day  of  April  2014.

| | |
|---|---|
| Plaintiff: | Arturo Castro |
| Address: | P.O. Box 9022402, San Juan, PR  00902-2402 |
| Tel . | 787 – 238 – 9319 |  Arturo Castro |
| E Mail: | acinterlaw@gmail.com |  Arturo Castro |