IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ARTURO CASTRO GUERRA<br><br>PLAINTIFF<br><br>V.<br><br>FIRSTBANK PUERTO RICO CORPORATION; JORGE E. PÉREZ CASELLAS; PREFERRED MORTGAGE CORPORATION; CAPITAL SERVICES INC.; TITLE SECURITY GROUP<br><br>DEFENDANTS | CIVIL NO.: 14-1280 (SEC)<br><br>PLAINTIFFS DEMANDS JURY TRIAL |

PROPOSED PRE-TRIAL ORDER

TO THE HONORABLE COURT:

COME NOW the parties, by and through the undersigned attorneys and respectfully state, allege and submit their Proposed Pretrial Order pursuant to the Court's Order as follows:

I.   COUNSEL FOR PARTIES

Plaintiff

Defendant FirstBank

Defendant FirstBank Puerto Rico (hereinafter "FirstBank") is represented by Francis Rodriguez Cardona and Nicole Stowell Alonso, Ledesma, Vargas & Villarrubia P.S.C., P.O. Box 194089, San Juan, PR  00919, Tel. 787-296-9500, Email: frodriguez@lvvlaw.com, nstowell@lvvlaw.com.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

### Defendant Preferred Mortgage

Defendant Preferred Mortgage Corporation (hereinafter Preferred), is represented by Jenyfer García Soto, jgarcia@ferraiuoli.com, and Luis G. Parrilla Hernández, lparrilla@ferraiuoli.com, Ferraiuoli LLC,  P.O. Box 195168, San Juan, PR 00919-5168, Tel. 787-766-7000, Fax. 787-766-7001.

### Defendants Capital Title Services and Title Security Group

Defendants Capital Title Services, Inc. (hereinafter Capital Title), and Title Security Group, Inc. (hereinafter Title Security) are represented by Julio Nigaglioni Arrache, Esq. and Áurea Y. Rivera Alvarado, Esq., Rivera-Munich, Eliza & Hernández Law Offices, P.S.C., P.O. Box 364908, San Juan, PR  00936-4908, Tel. 787-622-2323, Fax. 787-622-2320, Email: jnigaglioni@rmmelaw.com, arivera@rmmelaw.com.

### Defendant Jorge Pérez Casellas.

Jorge Pérez Casellas, Esq. (hereinafter "MAB") is represented by Pedro J. Quiñones Suárez and Luis N. Saldaña, Saldaña, Carvajal & Vélez-Rivé, PSC, 166 Ave. de la Constitución, San Juan, PR 00901, Tel. (787) 289-9250, Fax. (787) 289-9253, Email: pquinones@scvrlaw.com, lsaldana@scvrlaw.com.


II.     **BRIEF FACTUAL STATEMENT**

### Plaintiff

### Defendant FirstBank

Plaintiff filed the present complaint claiming damages as a result of the purchase of a property from FirstBank. As part of the complaint, plaintiff alleges false

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

representation by all defendants throughout the purchase transaction. However, the evidence shows that plaintiff does not have an actionable cause of action and there was no willful or negligent misrepresentation by FirstBank. As such, the claim against FirstBank must be dismissed.

### Defendant Preferred Mortgage

On April 30, 2015, plaintiff Arturo Castro acquired the property object of this case from codefendant Firstbank. Preferred originated a loan in connection with said transaction. According to Castro, Firstbank provided a false disclosure and/or failed to fully disclose the physical condition of the property, because it was found that the house in the property was made of wood. Castro has asserted that Preferred was completely unaware of the physical condition of the house, consequently Preferred has no responsibility for any misrepresentation as alleged by plaintiff. Preferred as loan originator complied with all its obligations and responsibilities to disclose meaningful credit terms to Castro, informed him who was to be the servicer of his loan, and the *Amended Complaint* does not present a single allegation against Preferred of making fraudulent claims or any other wrongdoing.

### Defendants Capital Title Services and Title Security Group

Plaintiff brings his action for alleged damages as a result of the purchase of a property from codefendant Firstbank Puerto Rico.  Capital Title prepared the Title Abstract of the property and Title Security issued title insurance.  Plaintiff alleged that Capital Title provided a faulty title abstract because it did not reflect the proper description for the property.  However, as the evidence will show, Capital Title copied

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

ad verbatim the property's legal description as it appears in the entries of the Property Registry.  As such, the claim against Capital Title and Title Security must be dismissed.

### Defendant Jorge Pérez Casellas.

The present case consists of a claim for damages by Plaintiff stemming from the purchase and sale of a property from codefendant Firstbank, which was financed by codefendant Preferred Mortgage.  Pérez Casellas was the Notary Public for the Deed of Sale.  It is alleged, as will be further discussed in section II, that Pérez Casellas did not use the proper description for the property in the Deed of Sale. However, as the evidence will show, Pérez Casellas used the legal description for the property which was provided by the Property Registry by way of a Title Abstract prepared by codefendant Capital Title.  As such, the claim against Pérez Casellas must be dismissed.

## II.   FACTUAL STATEMENT OF EACH PARTY'S CLAIM OR DEFENSES (INCLUDING ITEMIZED STATEMENT OF ANY DAMAGES CLAIMED)

### Plaintiff

### Defendant FirstBank

On April 2, 2014, Plaintiff Arturo Castro Guerra (hereinafter "Castro") filed the instant Complaint against FirstBank, Jorge E. Pérez Casellas (hereinafter "Pérez"), Capital Title Services, Inc., and Title Security Group, Inc. (hereinafter "Capital Title) and Preferred Mortgage Corp. (hereinafter "Preferred").  FirstBank

was served on May 27, 2014. (Docket No. 4). On July 23, 2014, Castro filed an Amended Complaint. (Docket No. 20).

Castro's Amended Complaint is essentially a rehash of the allegations made in the original Complaint with adjustments to better accommodate the causes of action stated. Just as the original complaint, the Amended Complaint lacks sufficient grounds to withstand a request for dismissal.

Castro's claims for relief are grounded in the following federal statutes: The Truth in Lending Act ("TILA"), 15 U.S.C.A. §1601, et seq.; The False Claim Act, 31 U.S.C.A. §3729, et seq.; the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C.A. § 2601 et seq.; and The Federal Home Loan Mortgage Corporation Act ("FHLMCA"), 12 U.S.C.A. § 1454, et seq. Castro also invoked federal supplemental jurisdiction pursuant to 28 U.S.C.A.§1367 to entertain a cause of action under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. Tit. 31 § 5141 ("Art. 1802").

The Amended Complaint states that Castro was the subject of deceptive real estate practices, of false disclosure and misrepresentation in the purchase of a residential property sold by FirstBank and financed by Preferred and that the "false misrepresentations and lack of full disclosure during the purchase have affected other parties in this lawsuit including FHA-HUD, as well as the owner/creditor of this mortgage note - the United States Federal Government agency GNMA-FHA Loan #13-5444". (Docket No. 20, ¶1).

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Castro alleges that FirstBank failed to disclose that the property in question was not made of concrete, but instead was a wooden house with a zinc roof infested with termites.

The property in question, located at 283 Julio Vizcarrondo St., Villa Palmera, San Juan, P.R. 00915 (hereinafter the "Property") was owned by Dolores González Viuda de Clotilde Zayas Quinones since July 30, 1968 as evidenced by Deed #18 of the same date. This deed reflects that the Property was a house made of wood and concrete with a zinc roof. On April 15, 1997, Mrs. González sold the property to Luis Alfredo Hernández Garay as evidenced by Deed #24 of same date. As before, the description of the Property is that of a house made of wood and concrete with a zinc roof.

On November 29, 2005 an Edification Act was prepared whereby it was requested that the Property Registry take notice of the house that was erected on the parcel of land. As a result, a new description of the Property was drafted eliminating all references to a house made of wood and concrete with a zinc roof. Instead, the new legal description of the Property describes the house as being 20 feet by 45 feet with a dining room, kitchen, three bedrooms, two baths, and a car port measuring 35 by 10 square feet with a new total area of 900 square feet. Prior to this Edification Act, the house itself was not part of the land parcel. With the Edification Act, the legal description of the land now contains the description of the house.

On November 29, 2005, Mr. Hernández Garay sold the Property to Mr. Emiliano Rosario Cepeda as evidenced by Deed #75. Mr. Rosario Cepeda obtained a

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

residential loan from FirstBank to purchase the property. Mr. Rosario Cepeda later defaulted on his loan payments and FirstBank foreclosed on the Property.

FirstBank acquired the Property as a result of a foreclosure procedure in local state court. After acquiring the Property, FirstBank proceeded to appraise the same and place it for sale in the open market. The appraisal made by Marlin Barreto on September 7, 2012 was in order to gain a realistic market value for the sale of the Property. According to said appraisal, the Property had an appraised value of $79,000.00. Shortly thereafter, Plaintiff contacted FirstBank about the Property and the latter referred Plaintiff to Sky Realty – the realty company in charge of the listing.

As per Plaintiff's own allegations, he visited and inspected the Property on several occasions and finally decided to purchase it. As a result, both Plaintiff and FirstBank signed an option to purchase contract on February 22, 2013 and agreed upon the sales price of $55,000.00. Plaintiff delivered to FirstBank a deposit in the amount of $2,750.00. Plaintiff requested a loan from Preferred Mortgage for the purchase and repairs of the Property.

As previously stated, Plaintiff voluntarily entered into a binding contract with FirstBank for the purchase of the property. As per the terms and conditions of the option to purchase contract, Plaintiff was acquiring the Property "as is, where is" and FirstBank did not furnish any type of warranties on the quality or condition of the Property. According to the contract, it was unequivocally agreed to that Plaintiff released and waived any possible claim as to the condition, quality, hidden defects or deficiencies and or structural soundness of the Property.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Plaintiff agreed with FirstBank that he would waive his right to file any claims against the latter for matters that precisely involve the present complaint. As a result, plaintiff has filed this complaint against FirstBank with actual knowledge of the fact that he was estopped from doing so. As a result, Plaintiff has acted in bath faith and with temerity.

In addition, both FirstBank and the appraiser, Mrs. Barreto, advised Plaintiff of the need or convenience to perform a complete inspection of the Property by a certified inspector/engineer. Plaintiff completely disregarded this advice and opted to visually inspect the property himself.

During the loan application and approval process with Preferred Mortgage, plaintiff acknowledges that an FHA Inspector inspected the Property several times in order to determine the structural soundness of the Property in the event that the interior wooden walls were to be removed. It is patently obvious that Plaintiff had knowledge, prior to purchasing the Property that at least the interior walls were made of wood and not concrete.

Also, after signing the option to purchase contract and before the purchase of the Property, Plaintiff stored nine (9) windows and (2) doors inside the Property. Plaintiff also installed a padlock on the Property. FirstBank did not authorize Plaintiff to store items, make repairs to or alter the Property prior to purchase. A maintenance company contracted by FirstBank broke the Plaintiff's padlock and removed all trash, debris, and Plaintiff's doors and windows. Plaintiff asked FirstBank to request the maintenance company to return the doors and windows.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

FirstBank maintains that Plaintiff was not allowed, contractually, to store materials in the Property prior to purchase. Plaintiff disregarded this and as a result is at a loss for said windows and doors. Plaintiff's claim as to the doors and windows are better directed at the maintenance company, which he has failed to include in the present complaint.

After purchasing the Property on April 30, 2013, Plaintiff began work to repair the same. According to Plaintiff, it is at this point in time when he became aware that the property was a not made of concrete, but instead a wood house with a zinc roof. Since, Plaintiff has hired an inspector to inspect the condition of the house, has visited the Property Registry and obtained documents that reveal that the previous legal description of the house was that of a wood house, with concrete and zinc roof. After the fact, Plaintiff also obtained a copy of the Edification Act and a Property Registry Certification.

Castro argues that "First Bank PR Corp., provided false disclosure, and failed to provide full disclosure to both real estate appraisers, to the FHA inspector, to the title insurance company, to the mortgage originator, Preferred, to the federal government agencies FHA/HUD, /GNMA, and to the buyer [Plaintiff]". (Docket No. 20, ¶22).

FirstBank shall demonstrate that a motion for summary judgment in its favor is warranted since there are no allegations, general or specific, that may grant any type of relief in favor of plaintiff. Furthermore, absent any responsibility or wrongdoing by FirstBank of any federal claims, the cause of action under Article 1802

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

of the Puerto Rico Civil Code and any other supplemental claims should also be dismissed.

### Defendant Preferred Mortgage

The *Amended Complaint* contains sixty two (62) paragraphs of factual allegations and on thirteen (13) of those paragraphs Castro mentioned or made reference to Preferred. None of the factual allegations state a claim against Preferred. More importantly, Castro, a Certified Public Accountant and law school graduate, and Firstbank, the seller, released Preferred of any responsibility for any damage, expense or disbursement as to any defects the property in question in this case may have. Preferred should be dismissed from this action due to Castro's failure to state any colorable claim against Preferred.

### A.     The Truth in Lending Act

As indicated in the applicable law section, TILA is a subchapter of the CCPA, as therein defined, and it requires creditors to disclose meaningful credit terms relating to finance charges, annual percentage rates of interest and borrowers' rights. Said disclosure is required so that the consumer, in this case Castro, is able to compare more readily other credit terms available to him and avoid the uninformed use of credit. TILA provides a cause of action if the creditor violates its requirements, that is, fails to disclose the credit terms, finance charges or annual percentage rates.

The Amended Complaint does not present a single allegation against Preferred for failure to disclose meaningful credit terms as required by TILA (subchapter I of CCPA). On the contrary, during his deposition testimony Castro acknowledged and admitted that on April 30, 2013, that is, the closing date, one of the many documents

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

he received and signed was the "Truth in Lending Disclosure Statement" which disclosed, among others: (a) the loan annual rate; (b) the finance charges; (c) the amount financed; (d) the total payments; (e) the interest rate; the principal plus interest monthly payment; (f) the escrow amount, which includes the insurance and the taxes; and (g) other itemized costs, as required by TILA.

Castro's Amended Complaint alleges that Firstbank, not Preferred, provided a false disclosure and/or failed to fully disclose the physical condition of the property. (Docket No. 20, ¶ 22). Therefore no TILA violations are alleged by Castro since his allegations of lack of full disclosure are not directed to the credit terms actually provided by Preferred at the time of closing, but to the physical condition of the property allegedly not disclosed by the seller, Firstbank. Even if the lack of disclosure about the physical condition of the property was attributable to Preferred, which clearly is not as alleged by Castro himself, such failure do not constitute a violation of TILA.

In addition, Castro testified that Preferred was unware of the physical condition of the property, stating that if "Preferred had known that this is a wood house, they would not have approved the mortgage of that or the 203k Loan either".

**B.**   <u>The Real Estate Settlement Procedures Act</u>

Although the *Amended Complaint* is not explicit, Castro hints that Preferred, among other defendants, violated RESPA (Docket No. 20, ¶¶ 9-11, 13). Notwithstanding, Castro admitted in his deposition testimony that on April 30, 2015, that is, the closing date, Preferred provided him, among other documents, with a

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

"Settlement Statement" and "Notice of Assignment, Sale or Transfer of Servicing Rights", which he signed.

As discussed below, RESPA is concerned with the settlement process for real estate and only some RESPA provisions set forth express private rights of action.  The *Amended Complaint* does not present a single allegation against Preferred for breach of any of its obligations under RESPA. In fact, Castro acknowledged and admitted that at the loan closing date on April 30, 2015, as part of all documents he received and signed, he received a "Settlement Statement", which provided a detailed disclosure of all settlement charges, that is, notary fees, CRIM taxes (real property taxes) and insurance, among others. Castro further admitted that as part of all documents signed, he received and signed a "Notice of Assignment, Sale or Transfer of Servicing Rights" which informed him that the servicer of the mortgage loan would be Banco Popular of Puerto Rico ("BPPR") and admitted that he has made his monthly loan payments to BPPR. Therefore, there is no factual controversy that Castro fails to advance any allegations that Preferred is liable for any of the actionable provisions of RESPA and lacks any evidence whatsoever to support his position. Preferred complied with RESPA by providing Castro among other documents, the "Settlement Statement" and the "Notice of Assignment, Sale or Transfer of Servicing Rights".

C. <u>False Claims Act</u>

The original Complaint was filed on April 2, 2014, and fifty five (55) days later, Preferred was served. Castro did not file the Complaint nor the Amended Complaint in camera and failed to serve the United States of America, to be able to properly

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

initiate a cause of action under FCA. Additionally, the Complaint, if it had been filed in camera, had to remain under seal for at least (60) sixty days. See 31 U.S.C.A. § 3730(b)(2). Castro did not comply with any of FCA's procedural requirements. To this day Castro has failed to do so. Even assuming that Castro may have complied with the filing requirements provided by 31 U.S.C.A. § 3730(b)(2), the factual allegations of the Amended Complaint and the evidence do not support a claim under FCA. Under FCA the plaintiff must assert factual allegations against a defendant for making false or fraudulent claims against the United States Government. See 31 U.S.C.A. § 3729(a)(1).

The Amended Complaint does not present a single allegation against Preferred of making fraudulent claims to the United States Government. The allegations of false disclosure asserted by Castro are against Firstbank. Furthermore, Castro avers that Preferred did not have knowledge of the alleged false disclosure provided by Firstbank. In addition, Castro admits that Preferred had no knowledge of the physical condition of the property.

Furthermore, Castro admits that he included the cause of action under FCA against Preferred because the loan granted to him is a federal loan and Preferred handled the approval of the loan; originated the loan; made the payments to, among others, the Notary Public, to Firstbank and the title company. Clearly, the aforementioned does not constitute a violation under the FCA.

Additionally, at the closing date on April 30, 2013, Firstbank, the seller, and Castro, a Certified Public Accountant and a law school graduate, signed a release in

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

which they certified that the information submitted for approval of the loan was true,

accurate and complete. See PSUMF 1 and 27. Specifically Castro and Firstbank

certified the following:

> We, the undersigned, certify the following:
> ….
> We hereby certify that the information that we have submitted
> to Preferred Mortgage Corp. concerning our mortgage loan application
> contains only true, accurate and complete information. We have not
> delivered false or incomplete information to Preferred Mortgage Corp.
> that may influence the decision to grant the mortgage loan. We
> understand that, had we submitted false or incomplete information, we
> would be in violation of federal and local laws and will be expose to the
> remedies that such laws provide.

The Amended Complaint avers that "[a]ll defendants participated in making a

false record or statement to get a false or fraudulent claim paid by the government

and/or conspired to have a false or fraudulent claim paid by the government." See

Docket No. 20, ¶ 80. Contrary to his earlier allegations, Castro testified under oath

that he never used the word conspiracy in his allegations.

### D. The Federal Home Loan Mortgage Corporation Act

Fannie Mae was created by the federal government under 12 U.S.C.A. § 1716

in order to establish secondary market facilities for residential mortgages and

Freddie Mac was created under 12 U.S.C.A. § 1451 for a substantially similar

purpose. In addition, 12 U.S.C.A. § 1454 relates to the Federal Home Loan Mortgage

Corporation ("FHLMC") and governs FHLMC's purchase and sale of mortgages; and

12 U.S.C.A. § 1723 relates to matters concerning the powers and duties of the

Government National Mortgage Association and matters regarding the board of

directors of Federal National Mortgage Association.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

In the Amended Complaint Castro claims, in summary, that Firstbank provided false disclosure and/or failed to fully disclose the physical condition of the property in question. Castro testified under oath that Preferred was unaware of the physical condition of the property. Once again, none of Castro's allegations under FHLMCA concern Preferred, since the cited statutes governs the Federal Home Loan Mortgage Corporation's purchase and sale of mortgages, therefore a cause of action for alleged false or lack of disclosure of the physical condition of the property is not available. Thus, Castro has failed to plead, and cannot possibly plead, a cause of action against Preferred.

### E. Article 1802 of the Puerto Rico Civil Code

Castro requests that this Honorable Court exercise supplemental jurisdiction over this cause of action. This court should decline supplemental jurisdiction if, as requested by Preferred, the rest of the federal claims are dismissed. The demise of the federal claims should entail the dismissal of the state law cause of action as well.

Castro fails to advance any factual allegations of acts or omissions or negligence allegedly committed by Preferred that may be actionable under Art. 1802. Once again the *Amended Complaint* claims, in summary, that Firstbank, not Preferred, provided false disclosure and/or failed to fully disclose the physical condition of the property in question, and that Firstbank did not disclose such information to Preferred. This was confirmed by Castro in his deposition testimony. Since there are no factual allegations or evidence of any wrongdoing by Preferred that may be compensated under Art. 1802, the claim should be dismissed with prejudice.

15

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Castro avers that the property title abstract prepared by Capital Title did not inform that the property was made of wood as it appears from the Deed Number 78 entitled "Acta de Edificación" prepared by attorney Francisco Díaz Herrero on November 29, 2005, and said document was not examined prior to the real estate closing on April 30, 2013. Castro alleges that Preferred and attorney Perez-Casellas, being in charge of the closing, should have inquired from Capital Title about this discrepancy and postponed the real estate closing.

Castro attached to his original Complaint a copy of the Deed of Construction (Acta de Edificación) as Exhibit 1, and the certified translation as Exhibit 2 (Docket No. 1, Ex. 1 and 2), to which he constantly refers to in his *Amended Complaint* (Docket No. 20). In this deed, the notary stated under his authority that in the subject property laid a house of "wood and concrete". After acknowledging the existence of the structure, the Notary Public declared that the new legal description of the property was:

---Fourth: That from now on its legal description will be the following:

---Urban: Lot of land located at the place denominated Seboruco, North Section of Santurce Ward, municipal term of San Juan, Puerto Rico marked with the number 28 of the urbanization plan. Consists of a surface extension of 158.37 square meters. Adjacent to the North, at 16.14 meters with lot number 29; on the South at 15.79 meter with the lot of Mrs. Carmen J. Widow of Domenech; at the East at 10.12 meters with Public Alley Esperanza and to the West, 9.72 meters with Julio Vizcarrondo Street.

---Enclosed is a structure of 20 feet of front times 45 feet at bottom. Consists of living-dining room, kitchen, three bedrooms, two bathrooms and a porch of 35 x 10 square feet, which structure now consists of 900 square feet of area.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

···Inscribed at page 286, turnaround of the tome (sic) 1011 of Santurce North, first inscription, farm 41525, Property Registry of San Juan, First Section.

In the Registrar Certification of the property in controversy, included as Exhibit 5 of Castro's original Complaint (Docket No. 1, Ex. 5), the Deed of Construction (Acta de Edificación) was recorded as the second inscription and the legal description of the property is identical to the one that was used in said deed. The legal description used in the property title abstract is the same, ad verbatim, to the one used in the Deed of Construction (Acta de Edificación), as registered in the 2nd inscription, recorded at volume 1026, page 190.

Neither the Deed of Construction (Acta de Edificación) nor the Registry Certification stated the property was infested with termites or specified the material composition of the house as alleged by Castro. The property title abstract prepared by Capital Title included the actual legal description of the property, as corrected on the Deed of Construction (Acta de Edificación). In addition, the abstract correctly reflected the liens and encumbrances on the property. The property title abstract reflected the valid and current Registry entries. An abstract does not need to delve into the deeds and documents upon which the entries are based. The purpose of the Registry of the Property is to provide a place where creditors and citizens in general can consult the necessary information to carry on an immovable property transaction. In the instant case, the abstract was accurate and showed correctly the information contained the Registry.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Preferred only needed to rely on the Property Registry records and the abstract correctly prepared by Capital Title, which do not provide a description of a wood property. The principles of legality, publicity, and specialty, basis of the Registry, demand a clear notice and warning to a third party arising from the mere reading of the entry or note entered in the books. <u>Royal Bank of Canada v. Registrador</u>, 104 D.P.R. 400 (1975), 4 P.R. Offic. Trans. 555. Preferred cannot not be held accountable for incorrect or missing information from the Property Registry, if any.

Moreover, at the closing date Castro, a law school graduate, and Firstbank signed a document in which they relieve Preferred of any responsibility for any damage, expense or disbursement to any defects that the property may have. Specifically Castro and Firstbank agreed to the following:

> We, the undersigned, certify the following:
> ….
> **We have been oriented by Preferred Mortgage Corp. staff on the importance of conducting a physical inspection of the property prior to closing.** In addition we have been oriented on the availability of trained personnel to carry put the inspection at an additional cost. **We have made efforts we believe necessary and we have determined that the property is in an acceptable condition for us. We have decided to continue with the closing by accepting the property in its current state and relieve Preferred Mortgage Corp. of any responsibility for any damage, expense or disbursement related to any defects that the property may have**.

Furthermore, in the process to apply for the mortgage loan with Preferred, Castro signed several documents. One of the documents signed by Castro on February 25, 2013 is titled "For Your Protection Get a Home Inspection" and the same has the word Caution in all sides of the document which recommended and informed, in

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

summary: (a) the importance to acquire an independent inspection of the property before its purchase; (b) the differences between a home inspection and an appraisal; (c) and warned that if Castro find problems with the property <u>after closing</u>, FHA cannot buy the home back from you. In sum, there are no factual allegations supported by evidence of any wrongdoing by Preferred that may be compensated under Art. 1802. Furthermore, both Firstbank and Castro relieved Preferred of any responsibility for any damage, expense or disbursement related to any defects that the property may have.

### Defendants Capital Title Services and Title Security Group

On April 2, 2014 plaintiff filed the instant action, pro se, against First Bank Puerto Rico, Jorge Pérez-Casellas, Preferred Mortgage Corporation, Capital Title Services, Inc., and Title Security Group, Inc. On July 14, 2014 defendants Capital Title and Title Security moved for the dismissal of the complaint under Rule 12(b)(6) of the FRCP, for failure to state a claim. (Docket No. 19). Acknowledging *sub silentio* the evident deficiencies of his original complaint, the plaintiff moved to amend his pleadings in order to make up for what was missing in his previous complaint. (Docket No. 20). Despite his best efforts, plaintiff has failed in his endeavor. On August 11, 2014 the defendants Capital Title and Title Security moved for the dismissal of the amended complaint for the same reasons previously argued (failure to state a claim). (Docket No. 23). On October 30, 2015 defendants Capital Title and Title Security filed a Memorandum of Law in Support of Motion for Summary Judgment.  (Docket No. 79).  All motions are pending adjudication.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Plaintiff brings his action under the Fourteenth Amendment and the Equal Protection clauses of the United States Constitution; the Truth in Lending Act, 15 U.S.C. § 1601; the False Claims Act, 31 U.S.C. § 3729; the Federal Home Loan Mortgage Corporation Act 28 U.S.C. § 1454, Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. Tit. 31 § 5141 and; the Constitution of the Commonwealth of Puerto Rico, although it does not specifically state under which of its clauses.

First, there are no pleadings sufficient enough to establish a cognizable cause of action against Capital Title and/or Title Security. The amended complaint only references these defendants in paragraphs 11-13, in the part of the complaint where the parties are described. In paragraph 11 plaintiff avers Capital Title is a company authorized to do business in Puerto Rico which conducted a "faulty property record search" as part of the settlement services and violated the False Claims Act, the Truth in Lending Act and the Real Estate Settlement Act (RESPA). The latter was not referred to in paragraph 2 of the complaint where plaintiff lists the laws in which the complaint is grounded. In paragraph 12, plaintiff avers Title Security is a domestic corporation which provided "insurance for the property" (without specifying which type of insurance), and is liable to plaintiff for its participation "within the settlement services performed" during the sale of the property subject of the complaint. In paragraph 13 the plaintiff avers that Capital Title and Title Security performed the abstract titles used in the closing of the property and are indispensable parties under RESPA. After a long narration of events, often unnecessarily repetitive, spanning 23 pages and 93 averments, plaintiff dedicates two more paragraphs to the appearing

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

defendants, to wit: 84 and 85. In paragraph 84 of the complaint plaintiff alleges Capital Title's title abstract was "faulty, defective, ineffective, of poor quality, and failed to detect major deficiencies in the property" and to examine the Deed of Construction ("Acta de Edificación"). In paragraph 85 of the complaint plaintiff alleges the title abstract failed to disclose the existence of the wooden house and that it belonged to a "third party".

Besides these scanty paragraphs, there are no more direct references to Capital Title or Title Security in the complaint. The other paragraphs that could be considered as referencing defendants herein are those paragraphs where plaintiff alleges all defendants are liable for the acts alleged thereat. Making all inferences in favor of the plaintiff, these paragraphs are: 79, 80, 86, 92 and 93.

The only thing Plaintiff's allegations show is a deep misunderstanding of the Notarial Act and the Property Registry System.

In sum, Plaintiff's claim has no merit and should be dismissed.  If plaintiff indeed suffered any damages as alleged in the Amended Complaint, which are denied, such damages are the sole, direct and proximate result of its own actions and or other parties which are not attributable to Capital Title and/or Title Security.

### Defendant Jorge Pérez Casellas

On April 2, 2014, Plaintiff Arturo Castro Guerra (hereinafter "Castro") filed the present action  against  Firstbank  Puerto  Rico  Corporation  (hereinafter "Firstbank"), Capital Title Services, Inc. (hereinafter "Capital Title"), Title Security Group, Inc. (hereinafter "Title   Security"); Preferred Mortgage (hereinafter

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

'Preferred"); and Jorge E. Pérez Casellas, Esq. (hereinafter "Pérez Casellas"),
seeking indemnification for his alleged damages as a result of a real estate purchase.

<u>See</u> Dkt. 1.  The action, brought under Federal Question, claims damages pursuant
to the Fourteenth Amendment, the False Claims Act, 31 U.S.C. § 3729, the Truth in
Lending Act, 15 U.S.C. § 1601; The Federal Home Loan Mortgage Corporation Act,
28 U.S.C. § 1454, and the Constitution of the Commonwealth of Puerto Rico.  Plaintiff
further requested supplemental jurisdiction under 28 U.S.C. 1367, and claims
damages under Art. 1802 of the Puerto Rico Civil Code.

On July 23rd, 2014, Plaintiff filed an *Amended Complaint* in an attempt to cure
his defective pleading. <u>See</u> Dkt. 20.  The *Amended Complaint* alleges, in essence, that
defendants are liable to Plaintiff for allegedly failing to provide full disclosure of
information to Plaintiff prior to his purchase of a real estate property from
codefendant Firstbank, including failing to disclose a defective property title, and
fraudulent misrepresentation of the house condition Id. at ¶ 21, 67, 75, 85.  Firstbank
was the seller of the property, while Preferred Mortgage issued the mortgage loan for
Plaintiff; Capital Title Services performed a title search and abstract of the property;
while Title Security Group provided insurance for the property. Id. at ¶ 8, 10, 11, 12,
13.  Pérez Casellas prepared the Deed of Sale for the property. Id. at ¶ 9.

Plaintiff claims that he purchased the property under the assumption that the
house was built out of cement.  Plaintiff visited the house on multiple occasions and
did not detect any severe damage or defects, nor did he detect that the house was not
made of cement. Id. at ¶ 34.  As per plaintiffs own allegations, there was no way to

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

know that the property was not build of cement unless some parts were taken down. Id. Plaintiff "would have to remove interior partitions and punch holes on the side of the house to make these discoveries". Id.

As it relates specifically to Pérez Casellas, Plaintiff alleges that Pérez Casellas, as Notary Public in the deed of sale, failed to provide "full disclosure" and misrepresented the facts in the Deed, by allegedly failing to state that the house located on the property was constructed out of wood and zinc. Id. at ¶ 65.  Plaintiff further alleges that Attorney Pérez reverted back to the original description of the property when the deed was prepared, which showed that the structure was a wood house with a zinc roof. Id. at ¶ 64.  Finally, Plaintiff alleges that given that Pérez Casellas research failed to detect major deficiencies in the property,  he is liable inasmuch as the notary services rendered are part of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2602.  Id. at ¶ 86.

On August 15th, 2014, Pérez Casellas filed a *Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(B)(6) of The Federal Rules of Civil Procedure.* See Dkt. 25.  In the same, Pérez requested the dismissal of the instant case against him given that plaintiff has failed to state a valid claim against him. Pérez Casellas argued that the functions of a Notary Public in Puerto Rico are governed by state law.  Specifically, the Puerto Rico Notarial Act, 4 L.P.R.A. § 2001, et seq. As such, the actions of Pérez in carrying out his functions as notary public are bound by the Notarial Act.   Pérez further set forth facts as to why Plaintiff's allegations show a complete misunderstanding of the Notarial Act and the Property

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Registry system and operation in Puerto Rico.  Pérez Casellas was bound by law to describe the property as per the Property Registry records, which is exactly what he did.  Contrary to Plaintiffs allegations, Pérez Casellas did not have any duty under the Notarial Act to review an old Deed of Construction ("Acta de Edificación") which showed an outdated description of the property.  The old description was superseded by a new description that the same Deed of Construction be amended.  That and of itself is sufficient to dismiss the instant case.  The *Motion to Dismiss* filed by Pérez is pending adjudication by the Court.

It is uncontested that Pérez Casellas fully carried out his duties as Notary Public.  Plaintiff does not possess a shred of evidence to support that Pérez failed in any way as Notary Public, or failed to provide "full disclosure".  This is highlighted by the undisputed fact that the legal description of the property in the Property Registry matches the description Pérez provided in the Deed of Sale.  In accordance with the Notarial Act, Pérez could not provide any other description for the property other than the one that was registered at the Property Registry.

Mr. Jorge Pérez Casellas is an Attorney and Notary Public, admitted to practice in the Commonwealth of Puerto Rico.  He was retained by Firstbank to prepare a Deed of Sale for the purchase and sale of a property between Firstbank, as seller, and Plaintiff Arturo Castro Guerra, as buyer.  The Deed of Sale was executed by Firstbank and Plaintiff Arturo Castro Guerra on April 30th, 2013.  Pérez Casellas is not a party to the purchase and sale of the property, as he is not the buyer or seller. In preparing the Deed of Sale for the property object of the present case, Attorney

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Pérez relied on an abstract[1] (title search) prepared by codefendant Capital Title Services, dated February 28th, 2013.  He specifically mentioned this fact to the parties in the Deed of Sale.  Additionally, Attorney Pérez specifically warned the parties that the abstract was not prepared by him, that is was not title insurance, and that it only reflects the reality of the Property Registry at the time is was prepared.  Further, Attorney Pérez specifically warned the parties that they could obtain a newer abstract, yet Firstbank and Plaintiff Castro Guerra opted not to do so.

In preparing the Deed of Sale and in full compliance with the Notarial Act, Pérez Casellas requested a title abstract from codefendant Capital Title.  Using the title abstract, he proceeded to draft the Deed of Sale.  The description of the property in the Deed of Sale and the abstract are identical.  Further, and most importantly, the description of the property in the Deed of Sale and the abstract, match the legal property description registered in the Property Registry.  This is all he had to comply under the law as a Notary.  Hence, it is an undisputed fact that Attorney Pérez fully complied with his duties under the law as a Notary.

However, Plaintiffs allegations show a deep misunderstanding of the Notarial Act and the Property Registry System.  First of all, Plaintiff alleges that Pérez "reverted" back to an original legal description of the property when the deed was prepared.  This is patently false.  The description of the property in the Deed of Sale and the abstract, match the property description registered in the Property Registry.  This is the property description Attorney Pérez is required by law to use, and in fact

---

[1] The terms title search, title study, and title abstract are used interchangeably, and have the same meaning.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

the one used.

In an effort to mislead the Court, Plaintiff has been focusing on a Deed of Construction ("Acta de Edificación") as the source of alleged information relevant to the preparation of the Deed of Sale.  Particularly, that the original description stated that the house was made of wood and zinc and that Pérez failed to mention it on the Deed of Sale.   This argument simply holds no water.  First of all, the Construction Deed states that the property is made out **wood and concrete, with a zinc roof.** Nonetheless, Plaintiff has continuously chosen to omit the fact that the original description of the house indicates that it is made out of concrete.  Second, the Deed of Construction requested the Property Registry amend the legal description of the property to a new description which **did not contain any mention whatsoever of the materials the house is constructed out of**.  The Deed of Construction was filed at the Property Registry on December 30th, 2005, and registered on January 24th, 2006.  To put it simply, the legal description of the property entered by the Registrar matches the description requested be entered into the Property Registry in the Deed of Construction.

As such, it is false to conclude that Pérez Casellas "reverted" to a different property description, when it is in fact plaintiff who is trying to use the old and outdated description contained in the Deed of Construction.  Further, Pérez Casellas had no duty to seek out or review the Deed of Construction.  Its only duty was to review the Property Registry and describe the property using the description provided therein, without any mention of building materials used.  As a matter of

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

fact and law, a Notary Public cannot ignore the property registry status of a property object of a public deed.  Attorney Pérez described the property in the Deed of Sale as recorded in the Property registry as per the Construction Deed, that is, without any mention of the materials the house structure was made out of.  No  law,  statute  or case law requires a Notary Public to question the entries recorded in the Property Registry.

The  principles  of  legality,  publicity,  and  specialty,  bases  of  the  Registry, protects  any  party  who  reasonably  and  honestly  relies  on  them  at  the  time  of perfecting  a legal transaction. A Notary Public is bound to comply with all duties arising from the law but is not a part of the legal transaction in itself. The Notary Public has a duty to  provide warning of the legal implications of certain acts to be taken by the parties. In this case, Plaintiff  admits that he was warned that the acquisition was made "as is, where is" (Allegation 65 of the Amended  Complaint). Furthermore, an examination of the Deed of Sale on which Plaintiff tries to impose responsibility upon Pérez clearly shows that that Pérez warned the Buyer of his right to examine the property  and the implications of buying the property "as is where is".  Additionally, a Notary has no duty to physically inspect the property.  It is outside the scope of his duties as Notary Public.  However, Plaintiff did inspect the property on several occasions and found no defects. See *Amended Complaint* at ¶ 34.

In sum, the record clearly defeats Plaintiffs' naked contentions.  It is simply undisputed that Plaintiff's claim lack merit, and cannot be upheld.  By the same taken, the allegations that Pérez Casellas violated the False Claim Act (FCA) and the

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Real Estate Settlement Practices Act (RESPA) cannot stand, as they are wholly inapplicable to Pérez Casellas.

The purpose of RESPA is to provide consumers with more information about the costs of the settlement process and to protect them from high settlement and closing charges. 12 U.S.C. § 2601(a). Plaintiff does not allege in his *Amended Complaint* that he had any issues with being provided costs of settlement services, or that he was taxed with high settlement charges. That in and of itself is sufficient do dismiss the claim. Further, the *Amended Complaint* is completely devoid of any factual allegation against Attorney Pérez which would constitute a violation of RESPA. Plaintiff does not mention any specific provision of RESPA against Attorney Pérez.

By the same token, the FCA is a piece of legislation which imposes liability on persons who defraud governmental programs and is codified in 31 U.S.C.S. §§ 3729-3733. The statute is targeted against those that make false claims for payment to the Federal Government. United States v Mackby, 339 F3d 1013 (9th Cir. 2003). The law seeks to protect the federal government's funds and property from fraudulent claims. Rainwater v United States, 356 US 590 (1958). This statute typically applies to government contractors, medical health providers, etc.

Attorney Pérez has made no claims for payment to the Federal Government, nor has plaintiff properly alleged any FCA violation in the *Amended Complaint*. As such, the FCA is wholly inapplicable to Attorney Pérez. Hence, the claim should be dismissed with prejudice.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Finally, given that FCA and RESPA are inapplicable to Pérez Casellas, the Court should refrain from exercising Supplemental Jurisdiction. It has been held that when all federal claims are dismissed federal courts should not exercise supplemental jurisdiction over the state-law claims.

In sum, Plaintiff's claim has no merit and should be dismissed. If plaintiff indeed suffered any damages as alleged in the Amended Complaint, which are denied, such damages are the sole, direct and proximate result of its own actions and or other parties which are not attributable to Pérez Casellas.

## III.   LEGAL THEORY

### Plaintiff

### Defendant FirstBank

The Real Estate Settlements Procedure Act ("RESPA"), Chapter 27 of 12 U.S.C., was enacted by Congress to provide a significant reform in the residential real estate settlement process. 12 U.S.C.A.§ 2601(a). Its purpose was to bring about certain changes in the settlement process for residential real estate that would result in: (1) more effective advance disclosure of settlement costs to home buyers and sellers; (2) elimination of kickbacks or referral fees that had the tendency to increase unnecessarily the costs of certain settlement services; (3) reduction in the amounts that home buyers were required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and (4) significant reform and modernization of local recordkeeping of land title information. 12 U.S.C.A.§ 2601(b).

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

To accomplish its purpose, RESPA sets forth various mechanisms such as: (1) imposing a uniform settlement statement, 12 U.S.C.A.§ 2603; providing informational booklets for home buyers, 12 U.S.C.A.§ 2604; requiring servicers of mortgage loans to respond to qualified written reports and to comply with disclosures relating to assignment, sale, or transfer of loans, 12 U.S.C.A.§2605; prohibiting kickback fees, 12 U.S.C.A.§ 2607; prohibition on sellers requirement of particular title insurance agencies 12 U.S.C.A.§ 2608; and, limitations on requirements on advance escrow accounts, 12 U.S.C.A.§ 2609.

Not all RESPA provisions contain express private causes of action. See Altman v. PNC Mortgage, 850 F. Supp. 2d 1057, 1074 (E.D. Cal. 2012) (concluding that "Congress did not intend to create a private right of action for disclosure violations under 12 U.S.C.A.§ 2603"); De Jesus-Serrano v. Sana Inv. Mortg. Bankers, Inc., 552 F.Supp.2d 191 (D.P.R. 2007) (concluding that a private cause of action does not exist under RESPA for violations of 12 U.S.C.A. § 2604); Carter v. Bank of Am.,N.A., 888 F. Supp. 2d 1, 16 (D.D.C. 2012) (finding that there is no private right of action for failure to comply with statutory requirements to provide accurate disclosures, good faith estimates, or settlement statements); Hardy v. Regions Mortgage, Inc., 449 F.3d 1357 (11th Cir. 2006) (concluding that there is no implied private right of action for failure to comply with limitations on advance escrow accounts). Notwithstanding, some RESPA provisions set forth express private rights of action.

Under 12 U.S.C.A.§ 2608 a seller is liable to a buyer, for violating subsection (a) of this provision, in an amount equal to three times all charges made for title

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

insurance. Subsection (a) states that "[n]o seller of property that will be purchased with the assistance of a federally related mortgage loan shall require directly or indirectly, as a condition to selling the property, that title insurance covering the property be purchased by the buyer from any particular title company." 12 U.S.C.A. § 2608(a).

The only reference, under RESPA, as to a possible violation of this Act by a seller is contained in 12 U.S.C.A.§ 2608. This section prohibits seller from requesting a buyer to obtain title insurance for the property from a particular title company. In the present case, buyer Castro obtained title insurance from Capital Title. In no way, shape or form did FirstBank request Castro to obtain title insurance from Capital Title. This was expressly recognized by Castro in his deposition (SUMF ¶40):

> Q. Did First Bank at any moment require you to obtain title insurance?
>
> A. That is a requirement by Preferred Mortgage, it's a requirement for FHA, too.
>
> Q. But did First Bank tell you get title insurance with this company?
>
> A. No.
>
> Q. No.
>
> A. No, Preferred Mortgage handled the financing, the title insurance. First Bank just sold me this property, that's all.

Plaintiff admits that FirstBank only sold the property to him and that the requirement to obtain title insurance did not come from FirstBank, but rather from Preferred. As a result, FirstBank did not commit any violations to RESPA.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Consequently, all allegations by plaintiff that FirstBank violated RESPA must be dismissed with prejudice.

The Truth in Lending Act, implemented by the Board of Governors of the Federal Reserve System through Regulation Z (12 C.F.R. Part 226), was enacted on May 29, 1968 as Title I of the Consumer Protection Act. The purpose of this act is to:

> promote the informed use of consumer credit by requiring disclosures about its terms and cost. The regulation also includes substantive protections. It gives consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling, regulates certain credit card practices, and provides a means for fair and timely resolution of credit billing disputes. The regulation does not generally govern charges for consumer credit, except that several provisions in Subpart G set forth special rules addressing certain charges applicable to credit card accounts under an open-end (not home-secured) consumer credit plan. The regulation requires a maximum interest rate to be stated in variable-rate contracts secured by the consumer's dwelling. It also imposes limitations on home-equity plans that are subject to the requirements of § 226.5b and mortgages that are subject to the requirements of §226.32. The regulation prohibits certain acts or practices in connection with credit secured by a dwelling in §226.36, and credit secured by a consumer's principal dwelling in § 226.35. The regulation also regulates certain practices of creditors who extend private education loans as defined in § 226.46(b)(5).
>
> 12 C.F.R. 226.1(b)

Pursuant to 12 C.F.R. 226.1(c), Regulation Z "applies to each individual or business that offers or extends credit when four conditions are met: (i) The credit is offered or extended to consumers; (ii) The offering or extension of credit is done regularly; (iii) The credit is subject to a finance charge or is payable by a written

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

agreement in more than four installments; and (iv) The credit is primarily for personal, family, or household purposes."

The Act requires creditors to make "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." <u>Beach v. Ocwen Fed. Bank</u>, 523 U.S. 410, 412 (1998); <u>Belini v. Wash. Mut. Bank, FA</u>, 412 F.3d 17, 20 (1st Cir. 2005). A creditor which breaches the statute will be liable in an amount for twice the finance charge illegally assessed. 16 U.S.C.S. § 1640(a). It also gives borrowers the right to rescind the contract provided certain conditions are met. 15 U.S.C. § 1635(a). <u>Egipciaco-Ruiz v. R&G Mortg. Corp.</u>, 2005 U.S. Dist. LEXIS 40857 (D.P.R. Sept. 21, 2005).

TILA does not provide for liability against a seller of a property. There is no single provision in the act that imposes liability for a seller's failure to disclose, assuming there was one in this case. TILA regulates lender's responsibilities in providing good faith estimates of settlement costs. TILA does not regulate the relationship between a seller and a buyer of real estate property, much less any obligations between them. TILA does not immerses itself in the request or issuance of title insurance, in the contents of a title abstract, or the contents of the inscriptions of the Property Registry. This cause of action, as it relates to FirstBank, should be dismissed with prejudice.

The Federal Home Loan Mortgage Corporation Act created the Federal Home Loan Mortgage Corporation (commonly referred to as Freddie Mac) which purpose is to purchase "mortgages originated by third-party lenders, pooling the mortgages into

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

investment instruments, and selling those mortgage-backed securities to raise capital for further purchases. By providing capital to lenders, these activities promote access to mortgage credit throughout the Nation and stabilize the secondary market for residential mortgages." Montgomery County v. Fannie Mae, 740 F. 3d 914 (2014).

Along with Freddie Mac, the purpose of the Federal Home Loan Mortgage Corporation Act is:

> (1) to provide stability in the secondary market for residential mortgages;
>
> (2) to respond appropriately to the private capital market;
>
> (3) to provide ongoing assistance to the secondary market for residential mortgages (including activities relating to mortgages on housing for low- and moderate-income families involving a reasonable economic return that may be less than the return earned on other activities) by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing; and
>
> (4) to promote access to mortgage credit throughout the Nation (including central cities, rural areas, and underserved areas) by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing.

Freddie Mac, does not issue loans, instead it purchases loans from lenders so these can in turn continue lending. The only prohibition contained in the law appears in 12 U.S.C.S. § 1457, which makes unlawful the use of the Corporation's name or any combination thereof: and to use "any sign, device, or insigne of the Corporation." 12 U.S.C.S. § 1457.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

As in the case of the previous laws, the Federal Home Loan Mortgage Corporation Act, has nothing to do with the activities of a seller of a property. Said law does not regulate in any way whatsoever the sale of property, the relationship between the seller and buyer and much less any obligations between the parties.

The Amended Complaint claims, in summary, that FirstBank provided false disclosure and/or failed to fully disclose the physical condition of the property in question. Specifically, Castro alleges that FirstBank failed to disclose that the property was built with wood plastered with cement, and infested with termites. Further, Castro alleges that said false or lack of disclosure was in violation of The Federal Home Loan Mortgage Corporation Act. Nonetheless, this Act does not provide redress to plaintiff for the alleged actions of FirstBank. Moreover, this Act does not provide plaintiff with a remedy against defendants in the present case. As a result, this claim and all allegations stemming from it against FirstBank must be dismissed with prejudice.

The False Claims Act ("FCA") establishes a procedure that permits either the Attorney General, § 3730(a), or a private party, § 3730(b), to initiate a civil action alleging fraud on the Government. A private enforcement action under the FCA is called a *qui tam* action, with the private party referred to as the "relator." U.S. ex rel. Eisenstein v. City of New York, New York, 556 U.S. 928 (2009) citing Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 769 (2000).

For a *qui tam* action to proceed, a civil action must first be filed, in camera, and remain under seal for at least 60 days and the United States must be served. 31

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

U.S.C.A. § 3730(b)(2). Within those sixty days, the government has the option to intervene and take over the prosecution of the case. *Id.* If the government chooses to intervene, it becomes the primarily responsible party, although the *qui tam* plaintiff, also known as the "relator," may still continue as a party. 31 U.S.C.A. § 3730(c)(1). If the government chooses not to intervene, the relator then has the right to proceed with the case on his own, with the hope of recovering a portion of any consequent damages and penalties. 31 U.S.C.A. §§ 3730(c)(3) and (d)(2). When declining to appear, the government may reserve the right to object to the relator's right under 31 U.S.C.A. § 3730(d) to recover, if successful, a percentage of the proceeds from the prosecution of the action. U.S. ex rel. LeBlanc v. Raytheon Co., Inc., 913 F.2d 17 (1st Cir. 1990).

The Complaint was filed on April 2, 2014 (Docket No. 1) and forty one (41) days later, FirstBank was served. Furthermore, Castro did not file the Complaint nor the Amended Complaint in camera and did not serve the United States of America, to initiate a cause of action under FCA and the Complaint had to remain under seal for at least (60) sixty days. *See* 31 U.S.C.A. § 3730(b)(2). Castro did not comply with said requirements.

Assuming the Complaint or the Amended Complaint complied with the filing requirements, which we deny, provided by 31 U.S.C.A. § 3730(b)(2), the factual allegations do not state a claim under FCA. Under FCA, the plaintiff must assert factual allegations against a defendant for making false or fraudulent claims against the United States Government. *See* 31 U.S.C.A. § 3729(a)(1).

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

The Amended Complaint does not present a single allegation against FirstBank of making fraudulent claims to the United States Government that meets the requirements of liability set forth under the FCA. Specifically, Castro claims that "First Bank PR Corp. provided false disclosure, and failed to fully disclosure to both real estate appraisers, to the FHA inspector, to the title insurance company, to the mortgage originator, Preferred, to the federal government agencies FHA/HUD, /GNMA, and to the buyer – the Plaintiff". (Docket No. 20, ¶ 22).

Even if we take Castro's allegations as true, which are not, it can reasonably be concluded that the Amended Complaint does not state a claim against FirstBank upon which a relief may be granted to Castro under FCA. Therefore, the cause of action under FCA must be dismissed with prejudice as plaintiff did not meet the filing requirements to initiate a cause of action under the FCA and the facts, as alleged, do not constitute any violations under the act.

Plaintiff claims to have a cause of action under the Fourteenth Amendment and the Equal Protection Clauses. Causes of action under these claims are actionable against government officials and not against private persons of entities. The Supreme Court in Shelley v. Kraemer, 334 U.S. 1 (1948) ruled that "the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful." Furthermore, the Supreme Court states, in Civil Rights Cases, 109 U.S. 3 (1883), that: "It is State action of a particular character that is prohibited. Individual invasion of individual rights is not the subject

matter of the amendment. It has a deeper and broader scope. It nullifies and makes void all State legislation, and State action of every kind, which impairs the privileges and immunities of citizens of the United States, or which injures them in life, liberty, or property without due process of law, or which denies to any of them the equal protection of the laws."

Plaintiff does not develop facts that may give rise to a cause of action under these clauses. There are no pleadings with specific facts that expand his claim and since the appearing defendants are private entities that did not act under color of state law, this court should dismiss with prejudice these claims against them.

Similarly, plaintiff avers to have a cause of action under the Constitution of the Commonwealth of Puerto Rico. Only in paragraphs two (2) and six (6) of the Amended Complaint is the Constitution of Puerto Rico referenced. Plaintiff does not develop facts that may give rise to a cause of action under the Puerto Rico Constitution. As a result, this cause of action shall be dismissed with prejudice. Furthermore, and as stated by co-defendant Capital Title, defendant FirstBank is a corporation which, for certain provisions as to right of intimacy and free speech, the constitution is inapposite to private citizens.

In Redondo Const. Corp. v. Izquierdo, 662 F.3d 42, 49 (1st Cir. 2011), the First Circuit restated the well settled rule that "[i]f the federal claims are dismissed before trial, .... the state claims should be dismissed as well." *Id.* (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726, (1966)). Federal courts may decline to exercise supplemental jurisdiction over a plaintiff's state law claims when the federal claims

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

that gave it original jurisdiction are dismissed. *See* 28 U.S.C.A.§1367(c)(3); González–De–Blasini v. Family Dept., 377 F.3d 81, 89 (1st Cir. 2004); Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).

Based on the above, this court should decline its supplemental jurisdiction over plaintiff's state cause of action under Article 1802 of the Puerto Rico Civil Code.

In the event that this Honorable Court decides to exercise supplemental jurisdiction over plaintiff's Art. 1802 claim, we maintain that the same is without merit and should be dismissed as well.

Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141, is a general tort law. This statute states that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." *Id.* Defendants hold that dismissal of all of the federal claims is warranted and as a result all state law claims as well must be dismissed. The Complaint and Amended Complaint were filed as a federal subject-matter jurisdiction and not as a diversity action. If all the federal causes of action are dismissed, this court should decline to exercise jurisdiction of the state law claims.

## Defendant Preferred Mortgage

Castro's claims for relief are grounded in the following federal statutes: The Truth in Lending Act ("TILA"), 15 U.S.C.A. §1601, *et seq.*; The False Claim Act, 31 U.S.C.A. §3729, *et seq.*; the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C.A. § 2601 *et seq.*; and The Federal Home Loan Mortgage Corporation Act ("FHLMCA"), 12 U.S.C.A. § 1454, *et seq.* Castro also invoked federal supplemental

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

jurisdiction pursuant to 28 U.S.C.A.§1367 to entertain a cause of action under Article

1802 of the Puerto Rico Civil Code, P.R. Laws Ann. Tit. 31 § 5141 ("Art. 1802").

### A.  The Truth in Lending Act

The Consumer Credit Protection Act ("CCPA"), Chapter 41 of Title 15, U.S.C.,

initially enacted in 1968, is a comprehensive consumer protection statute that

accomplishes its purpose through a number of subchapters, each of which regulates

a different aspect of or actor in the credit industry. <u>Sullivan v. Greenwood Credit</u>

<u>Union</u>, 520 F.3d 70, 73 (1st Cir. 2008). Subchapter I of the Consumer Credit Protection

Act is the Truth in Lending Act ("TILA"), 15 U.S.C.A.§ 1601 et seq., **which imposes**

**disclosure requirements on creditors**. <u>Id</u>.

Congress focused on creditors, not credit reporting agencies, when it enacted

the TILA in 1968 to "assure a meaningful **disclosure of credit terms** so that the

consumer will be able to compare more readily the various **credit terms** available to

him and avoid the uninformed use of credit," which would enhance "economic

stabilization ... and the competition among the various financial institutions."

<u>Sullivan v. Greenwood Credit Union</u>, 520 F.3d at 74, citing 15 U.S.C.A. § 1601(a); and

<u>Koons Buick Pontiac GMC, Inc. v. Nigh</u>, 543 U.S. 50, 53-54, 125 S.Ct. 460, 160 L.Ed.2d

389 (2004). "**The Act requires a creditor to disclose information relating to such things**

**as finance charges, annual percentage rates of interest, and borrowers' rights**, see [15

U.S.C.] §§ 1631-1632, 1635, 1637-1639, and it prescribes civil liability for any creditor

who fails to do so, see [15 U.S.C.] § 1640." <u>Koons</u>, 543 U.S. at 54, 125 S.Ct. 460 and

<u>Sullivan v. Greenwood Credit Union</u>, 520 F.3d at 74 (emphasis added).  If a creditor

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

violates TILA's requirements, a consumer is entitled to the sum of actual damages and statutory damages. <u>Sullivan v. Greenwood Credit Union</u>, 520 F.3d at 74.

## B. <u>The Real Estate Settlement Procedures Act</u>

The Real Estate Settlements Procedure Act ("RESPA"), Chapter 27 of 12 U.S.C., was enacted by Congress to provide a significant reform in the residential real estate settlement process. 12 U.S.C.A. § 2601(a). Its purpose was to bring about certain changes in the settlement process for residential real estate that would result in (1) more effective advance disclosure of settlement costs to home buyers and sellers; (2) elimination of kickbacks or referral fees that had the tendency to increase unnecessarily the costs of certain settlement services; (3) reduction in the amounts that home buyers were required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and (4) significant reform and modernization of local recordkeeping of land title information. 12 U.S.C.A. § 2601(b); see also <u>In re Rodriguez</u>, 377 B.R. 1, 6 (Bankr. D.P.R. 2007).

To accomplish its purpose, RESPA sets forth various mechanisms such as: (1) imposing a uniform settlement statement, 12 U.S.C.A.§ 2603; (2) providing informational booklets for home buyers, 12 U.S.C.A.§ 2604; (3) requiring servicers of mortgage loans to respond to qualified written reports and to **comply with disclosures relating to assignment, sale, or transfer of loans**, 12 U.S.C.A.§ 2605; prohibiting kickback fees, 12 U.S.C.A.§ 2607; prohibition on sellers requirement of particular title insurance agencies 12 U.S.C.A.§ 2608; and, limitations on requirements on advance escrow accounts, 12 U.S.C.A.§ 2609 (emphasis added).

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

It is important to note that not all RESPA provisions contain an express private cause of action. See <u>Altman v. PNC Mortgage</u>, 850 F. Supp. 2d 1057, 1074 (E.D. Cal. 2012) (concluding that "Congress did not intend to create a private right of action for disclosure violations under 12 U.S.C.A. § 2603"); <u>De Jesus-Serrano v. Sana Inv. Mortg. Bankers, Inc.</u>, 552 F.Supp.2d 191 (D.P.R. 2007) (concluding that a private cause of action does not exist under RESPA for violations of 12 U.S.C.A. § 2604); <u>Carter v. Bank of Am., N.A.,</u> 888 F. Supp. 2d 1, 16 (D.D.C. 2012) (finding that there is no private right of action for failure to comply with statutory requirements to provide accurate disclosures, good faith estimates, or settlement statements); <u>Hardy v. Regions Mortgage, Inc.,</u> 449 F.3d 1357 (11th Cir. 2006) (concluding that there is no implied private right of action for failure to comply with limitations on advance escrow accounts). Notwithstanding, some RESPA provisions set forth express private rights of action. These are briefly explained below.

Under 12 U.S.C.A. § 2605(f), a servicer of a mortgage loan is liable if it fails to disclose to an applicant information whether a loan may be assigned, sold, or transferred. A transferee of loan servicing is also liable if it fails to disclose that the loan was assigned, sold, or transferred to it. Further, a loan servicer is obliged to respond to inquiries from a borrower for information relating to the *servicing* of the loan. RESPA's regulations provide the following definition for the term servicing:

> *Servicing* means receiving any scheduled periodic payments from a borrower pursuant to the terms of any mortgage loan, including amounts for escrow accounts under section 10 of RESPA (12 U.S.C. 2609), and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

mortgage servicing loan documents or servicing contract. In the case of a home equity conversion mortgage or reverse mortgage as referenced in this section, servicing includes making payments to the borrower. 24 C.F.R. § 3500.2.

Under 12 U.S.C.A. § 2607(d), a servicer is liable if it gives or accepts fees, kickbacks, or things of value for business referrals. A servicer is also liable if it splits charges of real estate services, or if it unlawfully gives or accepts any fees, salaries, compensation, or other payments. Likewise, under 12 U.S.C.A.§ 2608(b), a seller is liable if it requires, directly or indirectly, that title insurance be bought from any particular title company

## C.    False Claims Act

The FCA establishes a scheme that permits either the Attorney General, § 3730(a), or a private party, § 3730(b), to initiate a civil action **alleging fraud *on the Government***. A private enforcement action under the FCA is called a *qui tam action*, with the private party referred to as the "relator." U.S. ex rel. Eisenstein v. City of New York, New York, 556 U.S. 928, 129 S.Ct. 2230, 173 L.Ed.2d 1255 (2009) citing Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 769, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000).

Under the FCA, a *qui tam action* **must <u>first</u> be served on the United States, rather than on a defendant. It is filed *<u>in camera</u>*, where it remains under seal for at least sixty days**. 31 U.S.C.A. § 3730(b)(2). Within those sixty days, the government has the option to intervene and take over the prosecution of the case. *<u>Id</u>*. If the government chooses to intervene, it becomes the primarily responsible party, although the qui tam plaintiff, also known as the "relator," may still continue as a

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

party. 31 U.S.C.A. § 3730(c)(1). If the government chooses not to intervene, the relator

then has the right to proceed with the case on his own, with the hope of recovering a

portion of any consequent damages and penalties. 31 U.S.C.A. §§ 3730(c)(3) and

(d)(2). When declining to appear, the government may reserve the right to object to

the relator's right under 31 U.S.C.A. § 3730(d) to recover, if successful, a percentage

of the proceeds from the prosecution of the action. U.S. ex rel. LeBlanc v. Raytheon

Co., Inc., 913 F.2d 17 (1st Cir. 1990) (Supplied emphasis).

Under the FCA a person is liable **to the** United States Government if said

person:

(A) **knowingly** presents, or causes to be presented, a false or fraudulent
claim for payment or approval;

(B) **knowingly** makes, uses, or causes to be made or used, a false record or
statement material to a false or fraudulent claim;

(C) **conspires** to commit a violation of subparagraph (A), (B), (D), (E), (F), or
(G);

(D) has possession, custody, or control of property or money used, or to be
used, by the Government and **knowingly** delivers, or causes to be delivered,
less than all of that money or property;

(E) is authorized to make or deliver a document certifying receipt of
property used, or to be used, by the Government and, **intending** to defraud
the Government, makes or delivers the receipt without completely knowing
that the information on the receipt is true;

(F) **knowingly** buys, or receives as a pledge of an obligation or debt, public
property from an officer or employee of the Government, or a member of the
Armed Forces, who lawfully may not sell or pledge property; or

(G) **knowingly makes**, uses, or causes to be made or used, a false record or

statement material to an obligation to pay or transmit money or property to the

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.  *See* 31 U.S.C.A. § 3729(a)(1).

**D.**   <u>The Federal Home Loan Mortgage Corporation Act</u>

Fannie Mae and Freddie Mac are federally chartered private corporations that own or guarantee a substantial portion of the mortgages on single-family homes in the United States. Fannie Mae was created by the federal government in order to "establish secondary market facilities for residential mortgages," to "provide stability in the secondary market for residential mortgages," and to "promote mortgage investments throughout the Nation ... by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing." *See* 12 U.S.C.A.§ 1716. Freddie Mac was created for a substantially similar purpose, as well as to compete with Fannie Mae in the secondary market for mortgages. *See* 12 U.S.C.A.§ 1451 (describing Freddie Mac's mission to "increas[e] the liquidity" of the mortgage market and to "promote access to mortgage credit throughout the Nation"). <u>Griffith v. Fed. Nat. Mortgage Ass'n</u>, 2014 WL 2573329 (S.D.W. Va. June 9, 2014).

The Federal Home Loan Mortgage Corporation is a publicly traded United States Corporation chartered by an Act of Congress, organized and existing under the Federal Home Loan Mortgage Corporation Act, 12 U.S.C.A.§ 1451, *et seq*. <u>Urban v. Fed. Home Loan Mortgage Corp.</u>, 2014 WL 2649758 (D. Mass. June 12, 2014). The Government National Mortgage Association ("Ginnie Mae") is a government agency

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

within the Department of Housing and Urban Development. See 12 U.S.C.A. §
1717(a)(2)(A). Absent a waiver, sovereign immunity shields the Federal Government
and its agencies from suit. Loeffler v. Frank, 486 U.S. 549, 554 (1988). 12 U.S.C.A. §
1723a(a) gives Ginnie Mae the power "to sue and to be sued, and to complain and to
defend, in any court of competent jurisdiction, State or Federal, but no attachment,
injunction, or other similar process, mesne or final, shall be issued against the
property of the Association or against the Association with respect to its property ....".
Yost v. Nationstar Mortgage, LLC, 2013 WL 4828590 (E.D. Cal. Sept. 9, 2013)

E.  **Claims for damages under Article 1802 of the Puerto Rico Civil**

   i.  **Supplemental Jurisdiction**

In Redondo Const. Corp. v. Izquierdo, 662 F.3d 42, 49 (1st Cir. 2011), the First
Circuit recapitulated the well settled rule that "[i]f the federal claims are dismissed
before trial, .... the state claims should be dismissed as well." *Id.* (quoting United Mine
Workers v. Gibbs, 383 U.S. 715, 726, (1966)). It reminded; however, that such general
principle is no "mandatory rule to be applied inflexibly in all cases[,]" *id.* (citation
omitted), punctuating that "[d]istrict court[s] must exercise 'informed discretion'
when deciding whether to exercise supplemental jurisdiction over state law claims."
Id. (quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256–57 (1st
Cir.1996)). Such a determination implicates a weighing of several factors: to wit,
comity, judicial economy, convenience, and fairness. *Id.* (citations omitted).

Federal courts may decline to exercise supplemental jurisdiction over a
plaintiff's state law claims when the federal claims that gave it original jurisdiction

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

are dismissed. *See* 28 U.S.C.A. § 1367(c)(3); <u>González–De–Blasini v. Family Dept.</u>,

377 F.3d 81, 89 (1st Cir. 2004); <u>Camelio v. Am. Fed'n</u>, 137 F.3d 666, 672 (1st Cir. 1998).

> ii.   <u>Property Registry Records</u>

The principles of legality, publicity, and specialty, basis of the Registry, demand

a clear notice and warning to a third party arising from the mere reading of the entry

or note entered in the books. **The regime would be seriously violated if the interested**

**party were imposed the obligation of questioning the qualification of "curable"**

**entered by the Registrar and starting his own investigation from which it could**

**appear that the defect is "incurable" and the record void**. Such a distorting conclusion

of our registry system was reached in <u>Caballero v. Registrar</u>, 42 P.R.R. 614, 616

(1931), in a dictum of Judge Wolf. To reiterate this criteria now would be tantamount

to denying the protection to a third party, which is the main nerve of our real estate

law, and to let the latter protect himself with inquiries and investigations. <u>Royal Bank</u>

<u>of Canada v. Registrador</u>, 104 D.P.R. 400 (1975), 4 P.R. Offic. Trans. 555. (Supplied

emphasis).

The principle of legality is that which imposes that the titles sought to be

recorded in the Registry of Property, be submitted to a previous examination,

verification or qualification, so that only valid and perfect titles appear in the

mortgage books. *Id*. **In a system where registry entries are assumed or deemed to be**

**exact or concomitant with the juridical reality**, the existence of a pre-record

proceeding to clear out the titles presented for record is logical. *Id*.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Section 2102 of the Puerto Rico Mortgage Law ("PRLM"), P.R. St T. 30 § 2102 provides that "The Registrars shall issue literal, brief, partial or negative certifications of the different registry entries upon a written request by anyone stating an interest in ascertaining the legal status of any real property or right in question, or by virtue of an order of the court". Furthermore, Section 2105 of PRLM, P.R. St T. 30 § 2105 provides that "Certifications issued by the Registrars are public documents and, as such, may be considered evidence in their own right".

### iii.   Property Title Searches ("Abstracts")

The purpose of an abstract is to inquire into the background, liens and encumbrances of a property. Ramos-Meléndez v. Cabiya-Ortiz, 20 P.R. Offic. Trans. 835, 840 (1988). Under Puerto Rico law a notary is required to secure a title abstract before proceeding to authorize a deed involving a real estate property. "This inquiry into the background, as well as the determination of the liens or encumbrances to be done in the deed, are of unquestionable importance." Chévere v. Cátala, 15 P.R. Offic. Trans. 572, 585-586 (1984).

### Defendants Capital Title Services and Title Security Group

### *The Real Estate Settlement Procedures Act (RESPA)*

The purpose of RESPA was to provide consumers with more information about the costs of the settlement process and to protect them from high settlement and closing charges. 12 U.S.C. § 2601(a). According to 12 U.S.C. § 2601(b):

It is the purpose of this Act to effect certain changes in the settlement process for residential real estate that will result-

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

(1) in more effective advance disclosure to home buyers and sellers of settlement costs;

(2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services;

(3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and

(4) in significant reform and modernization of local recordkeeping of land title information.

According to 12 U.S.C. 2602(3) settlement services include "title searches, title examinations, the provision of title certificates, title insurance. Title company is defined in 12 U.S.C. 2602(3) as an "institution which is qualified to issue title insurance, directly or through its agents." The Act provides for certain mandatory disclosures itemizing the fees to be paid by a borrower and a seller as part of the settlement process. Regarding title insurance, 12 U.S.C. § 2603(a) requires the buyer be informed whether the premium charged covers the borrower, the lender or both. Lenders are obliged to distribute to all buyers and applicants of mortgage loans a booklet prepared by the Director of the Bureau of Consumer Financial Protection, explaining in plain language the settlement process. 12 U.S.C. § 2604.

The law also imposes upon lenders the obligation to inform mortgagors if the loan will be serviced by a third party and the duty of the loan servicer to quickly respond to borrower inquiries. 12 U.S.C. § 2605. The law prohibits kickbacks and unearned fees. 12 U.S.C. § 2607. It makes illegal for a seller to require as a condition of the sale of a property that title insurance be purchased from a particular insurer

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

or agent. 12 U.S.C. § 2608. It also regulates escrow accounts, 12 U.S.C. § 2609 and prohibits charging fees for the preparation of truth-in-lending, uniform settlement and escrow statements, 12 U.S.C. § 2610.

We must state from the outset that plaintiff does not allege in his amended complaint which specific provision of RESPA Capital Title and Title Security violated. All it states is that "all" defendants violated RESPA but without identifying the particular language of the law the appearing defendants, or any other of the defendants, allegedly breached. Furthermore, the record is absent of any fact that supports Plaintiff's allegations that Captital Title and/or Title Security violated any of RESPA's dispositions.

The only pleadings in which Plaintiff unsuccessfully tries to allege the appearing defendants violated RESPA provisions are contained in paragraphs 11 to 13 of the Amended Complaint. In paragraph 11 plaintiff avers that Capital Title is a company authorized to do business in Puerto Rico which conducted a "faulty property record search" as part of the settlement services and violated the False Claims Act, the Truth in Lending Act and the Real Estate Settlement Act (RESPA). The latter was not referred to in paragraph 2 of the complaint where plaintiff lists the laws in which the complaint is grounded. To support this allegation Plaintiff avers that the abstract prepared by Capital Title was a copy and paste job from a previous abstract, that no actual Title Search was done. Plaintiff bases this assertion on mere speculations since he does not know where the information contained in the abstract came from or what the process to make an abstract is.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

In paragraph 12, plaintiff avers Title Security is a domestic corporation which provided "insurance for the property" (without specifying which type of insurance), and is liable to plaintiff for its participation "within the settlement services performed" during the sale of the property subject of the complaint. Plaintiff has nothing to support this allegation, and the averment by itself does not meet the plausibility standard of <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 667-669 (2009), which is a lesser standard that the one required at the motion for summary judgment stage.

In paragraph 13 the plaintiff avers that Capital Title and Title Security performed the abstract titles used in the closing of the property and are indispensable parties under RESPA. This averment only shows Plaintiff's desperate attempt to try to justify why he included appearing defendants in the case at bar. The record is absent of any pleading and/or evidence in support of this allegation. Nothing on the record supports that the appearing defendants are indispensable parties in this case. The evidence only shows that all allegations against the appearing defendants are frivolous, to say the least.

RESPA in any way regulates or defines the liability of a title abstract company or a title insurance or agent company, for failure to produce an adequate title abstract or for failing to detect defects in title. The law has nothing to do with the act of conducting a title abstract or defining the duties and responsibilities of an abstractor. Therefore, this cause of action against Capital Title and Title Security should be dismissed with prejudice.

### *The Truth in Lending Act (TILA)*

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

First of all, it should also be noted that plaintiff's pleadings fail to specify which section of TILA Capital Title and Title Insurance specifically violated. The only reference just states gratuitously that all defendants, which purportedly includes Capital Title and Title Insurance, have violated TILA by "their callous disregard of the truth or falsity of the information provided to FHA".

The record lacks any pleadings to further develop this averment and any evidence to support this allegation. Making all inferences in favor of the plaintiff, the only claim that can be directed against appearing defendants in this regard is the alleged failure to disclose serious deficiencies of title in the abstract Capital Title performed. Plaintiff tries to support this allegation against appearing defendants stating that the description of the property on abstract is allegedly different from the description on the Deed of Construction of the year 2005. Plaintiff's allegation was proved wrong by the evidence. A reading of description on the Deed of Construction of the year 2005 (which was produced by Plaintiff itself) reveals that the description of the property contained in the abstract prepared by Capital Title is the same contained in page 3, section FOURTH of the Deed of Construction of the year 2005, which in turn is the same in the entries of the Property Registry. That is, the title abstract copied ad verbatim the contents of the Registry entries.

TILA was enacted on May 29, 1968 as Title I of the Consumer Protection Act. The purpose of the statute is to:

> ...assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

and unfair credit billing and credit card practices." 16
U.S.C.S. § 1601(a).

The Act requires creditors to make "clear and accurate disclosures of terms
dealing with things like finance charges, annual percentage rates of interest, and the
borrower's rights." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412, 140 L. Ed. 2d 566,
118 S. Ct. 1408 (1998); Belini v. Wash. Mut. Bank, FA, 412 F.3d 17, 20 (1st Cir. 2005).
Failure to do so entails criminal and civil penalties. 15 U.S.C.S. § 1611. A creditor
which breaches the statute will be liable in an amount for twice the finance charge
illegally assessed. 16 U.S.C.S. § 1640(a). It also gives borrower the right to rescind
the contract provided certain conditions are met. 15 U.S.C. § 1635(a). Egipciaco-Ruiz
v. R&G Mortg. Corp., 2005 U.S. Dist. LEXIS 40857 (D.P.R. Sept. 21, 2005).

TILA does not provide for liability against a title insurance company or agent,
or a title abstract company for errors in an abstract or for failure to include a build
record in its search. There is no single provision in the act that imposes liability for
faulty abstracts, assuming arguendo there was one in this case. TILA regulates the
responsibility of lenders of providing good faith estimates of settlement costs. It has
nothing to do with title insurance, omissions in an abstract, or failure to faithfully
and accurately disclose the inscriptions of the Registry of the Property. TILA could
have come into play had lender failed to disclose the estimated costs of title insurance
or of the title abstracts, but such is not the case in the instant action, and nothing in
the complaint points to this direction. This cause of action should be dismissed with
prejudice against Capital Title and Title Security.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

## *False claims act*

The False Claims Act is a piece of legislation which imposes liability on persons who defraud governmental programs and is codified in 31 U.S.C.S. §§ 3729-3733. The statute is targeted against those that make false claims for payment to the Federal Government. United States v Mackby, 339 F3d 1013 (9th Cir. 2003). The law seeks to protect the federal government's funds and property from fraudulent claims. Rainwater v United States, 356 US 590 (1958). This statute typically applies to government contractors, medical health providers, etc.

Section 3730 (31 U.S.C.S. § 3730) empowers the attorney general to investigate any possible violation of the law and to bring a private cause of action against the persons who allegedly infringed the law. It also allows private citizens to bring an action provided certain requirements and conditions are met. 31 U.S.C.S. 3730. This action is known as *qui tam* and allows the private enforcer to collect part of the proceeds of the case. 31 U.S.C.S. 3731(d).

Like the rest of the laws under which plaintiff filed his complaint, this law is inapplicable to Capital Title and Title Security and, therefore, the claim against them should be dismissed with prejudice.

## *The Federal Home Loan Mortgage Corporation Act*

The Federal Home Loan Mortgage Corporation Act was enacted to:

> (1) to provide stability in the secondary market for residential mortgages;

> (2) to respond appropriately to the private capital market;

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

> (3) to provide ongoing assistance to the secondary market for residential mortgages (including activities relating to mortgages on housing for low- and moderate-income families involving a reasonable economic return that may be less than the return earned on other activities) by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing; and
>
> (4) to promote access to mortgage credit throughout the Nation(including central cities, rural areas, and underserved areas) by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing. 12 U.S.C.S. 1451(b).

The Act creates a corporation known as the Federal Home Loan Mortgage Corporation, and its main purpose is to promote stability and affordability in the housing market by purchasing mortgages from banks and loans generators, thus maintaining a continuous flow of capital to lending institutions so that banks can continue lending money for home purchases. DeKalb County v. Fed. Hous. Fin. Agency, 741 F.3d 795, 797 (7th Cir. 2013); 12 U.S.C.S. §§ 1452, 1454. The Corporation, which is known as Freddie Mac, does not issue loans, instead it purchases loans from lenders "to replenish" their supply of funds.[2]

The only prohibition contained in the law appears in 12 U.S.C.S. § 1457, which makes unlawful the use of the Corporation's name or any combination thereof: and to use "any sign, device, or insigne of the Corporation." 12 U.S.C.S. § 1457.

---

[2] Frequently Asked Questions; at: http://www.freddiemac.com/corporate/company_profile/faqs/?intcmp=AFCPFA.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

As in the case of the previous laws, the Federal Home Loan Mortgage Corporation Act, has nothing to do with the activities of an abstract company or a title insurance or agent company. Said law does not regulate in any way whatsoever title abstracts or the selling and issuance of title insurance, therefore, the claim against Capital Title and Title Security should be dismissed with prejudice.

## _Supplemental Jurisdiction_

The appearing defendants very respectfully submits that this Honorable Court should decline supplemental jurisdiction. It has been held that when all federal claims are dismissed federal courts should not exercise supplemental jurisdiction over the state-law claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 no.7, 108 S. Ct. 614 (1988); Castellano v. Bd. of Trustees, 937 F.2d 752, 758 (2d Cir.1991); Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir.2001); Torres v House of Representatives of P.R., 2012 WL 1259098;

In Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995), the Court of Appeals for the First Circuit stated:

> As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims... But this praxis is not compelled by a lack of judicial power. It signifies only that, in the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine –judicial economy, convenience, fairness, and comity– will point toward declining to exercise jurisdiction over the remaining state-law claims. (Citations omitted).

See also, <u>Redondo Constr. Corp. v. Izquierdo</u>, 662 F.3d 42, 49 (1st Cir. 2011). If "[i]f the federal claims are dismissed before trial ...the state claims should be dismissed as well." <u>Gautier-Figueroa v. Bristol-Myers Squibb P.R.</u>, 845 F. Supp. 2D 444, 465 (D.P.R. 2012)2, citing <u>Redondo</u> 662 F.3d 42, at 49.

Based on the above this court should decline its supplemental jurisdiction over plaintiff's state cause of action under Article 1802 of the Puerto Rico Civil Code.

### *Dismissal of Article 1802 Claim*

Even if this Honorable Court decides to exercise its supplemental jurisdiction, plaintiff's Article 1802 claim should be dismissed. Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141, is Puerto Rico's general tort law. This statute provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." <u>González Figueroa v. J.C. Penney P.R., Inc</u>., 568 F.3d 313, 318 (1st Cir. 2009).

Plaintiff claims the Honorable Court has supplemental jurisdiction of this cause of action. Defendants submit this cause of action should be dismissed for two main reasons. First, this court should decline supplemental jurisdiction if, as requested, the rest of the federal claims are dismissed. The demise of the federal claims should entail the dismissal of the state law cause of action. The complaint was filed as a federal subject-matter jurisdiction and not as a diversity action. If all the federal causes of action are dismissed, this court should decline its exercise of the state-law claims. Second, as previously argued, in deciding this motion for summary judgment, the court could consider those documents that are "central to [the]

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

plaintiff['s] claim", or those that are sufficiently referred to in the complaint. <u>Schaefer</u>

<u>v. IndyMac Mortg. Servs.</u>, 731 F.3d 98, at 100 n.1.

As stated above, Capital Title and Title Security are mentioned in only a

handful of pleadings. Besides the part of the complaint where the defendants are

described, Capital Title and Title Security are specifically referred to in paragraphs

84 and 85 of the complaint. The rest of the paragraphs in which defendants herein

are referred to, are those in which liability is attributed to all defendants in general

terms without making any distinction in the degree of responsibility.

In paragraph 84 of the amended complaint, Capital Title and Title Security

title abstract was "faulty, defective, and ineffective, of poor quality, and failed to

detect major deficiencies in the property." Title abstracts in Puerto Rico play a key

role in the real estate business. Abstracts are required for all real estate transactions

in which a notary participates and authorizes a deed involving immovable property.

The purpose of an abstract is to inquire into the background, liens and encumbrances

of a property. <u>Ramos-Meléndez v. Cabiya-Ortiz</u>, 20 P.R. Offic. Trans. 835, 840 (1988).

Under Puerto Rico law a notary is required to secure a title abstract before proceeding

to authorize a deed involving a real estate property. "This inquiry into the

background, as well as the determination of the liens or encumbrances to be done in

the deed, are of unquestionable importance." <u>Chévere v. Cátala</u>, 15 P.R. Offic. Trans.

572, 585-586 (1984).

Plaintiff attached to his original complaint copy of the Deed of Construction

No. 78, of November 29, 2005, before Notary Public Luis Alfredo Hernández Garay

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

("Acta de Rectificación"), to which he constantly refers to in his complaint. (Docket

No. 1-4). In this deed, the notary stated under his authority that in the subject

property laid a house of "wood and concrete". After acknowledging the existence of

the structure, the Notary declared that the new legal description of the property was:

> ---Fourth: That from now on its legal description will be the
> following:
>
> ---Urban: Lot of land located at the place denominated
> Seboruco, North Section of Santurce Ward, municipal term
> of San Juan, Puerto Rico marked with the number 28 of the
> urbanization plan. Consists of a surface extension of 158.37
> square meters. Adjacent to the North, at 16.14 meters with
> lot number 29; on the South at 15.79 meter with the lot of
> Mrs. Carmen J. Widow of Domenech; at the East at 10.12
> meters with Public Alley Esperanza and to the West, 9.72
> meters with Julio Vizcarrondo Street.
>
> ---Enclosed is a structure of 20 feet of front times 45 feet at
> bottom. Consists of living-dining room, kitchen, three
> bedrooms, two bathrooms and a porch of 35 x 10 square
> feet, which structure now consists of 900 square feet of
> area.
>
> ---Inscribed at page 286, turnaround of the tome (sic) 1011
> of Santurce North, first inscription, farm 41525, Property
> Registry of San Juan, First Section.3

In the Registry Certification of the property in controversy, the Deed of

Construction was recorded as the second inscription and the legal description of the

property is identical to the one that was used in said deed.

The legal description used in the title abstract is the same, ad verbatim, to the

one used in the Deed of Construction, as registered in the 2nd inscription, recorded

at volume 1026, page 190.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Neither the Deed of Construction nor the Registry Certification stated the property was infested with termites or specified the material it was made of. Capital Title's title abstract was accurate as it included the correct legal description of the property, as corrected on Deed of Construction No. 78 and used at inscription 2. In addition to the above, the abstract correctly reflected the liens and encumbrances on the property. Capital's title abstract was accurate and correct as it reflected the valid and current Registry entries. An abstract does not need to delve into the deeds and documents upon which the entries are based. The purpose of the Registry of the Property is to provide a place where creditors and citizens in general can consult the necessary information to carry on an immovable property transaction. In the instant case, the abstract was accurate and showed correctly the information contained the registry. Capital Title and Title Security should not be held accountable for incorrect or missing information from the Registry.

Based on the above, what plausible claim has plaintiff asserted against Capital Title and Title Security under Article 1802? According to the Supreme Court's decision in Iqbal, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." What reasonable inference can the court draw from the bare bones allegations of the complaint? Was there any misconduct alleged against Capital Title and Title Security? The answer is no. Even worse for Plaintiff is the fact that no jury can reasonably conclude that Capital Title or Title Security are liable for the misconduct alleged.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

The Honorable Court can take judicial notice abstractors do no visit the field. Instead, they prepare their abstracts by going to the Registry of the Property and inspecting the official records, books and entries. How were Capital Title and Title Security supposed to know the house was termite infested or that it was made of wood, when the legal description is silent as to the building material it is made of?

## *The constitution of the Commonwealth of Puerto Rico*

In paragraph 2 of his amended complaint plaintiff states this action was brought also under the Constitution of the Commonwealth of Puerto Rico. It is unclear what he meant by this, since the Puerto Rico constitution is not mentioned again in the complaint. If plaintiff ever had the intention of bringing a cause of action under the local constitution, his actions fell short of his wishes. Since no specific reference is made to the Puerto Rico constitution, this cause of action should be dismissed. In addition, Capital Title and Title Security are corporations and except for certain provisions as to right of intimacy and free speech the constitution is inapposite to private citizens.

## *The Fourteenth Amendment and the Equal Protection Clause of the United States Constitution*

Finally, in paragraph 2 of his amended complaint, plaintiff asserts to bring his action under the Fourteenth Amendment and the Equal Protection Clause. Individual liberties guaranteed by the United States Constitution protect not against actions by private persons or entities, but only against actions by government officials (with exception of the Thirteenth Amendment's ban on slavery). Regarding the

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Fourteenth Amendment, the Supreme Court ruled in <u>Shelley v. Kraemer,</u> 334 U.S. 1 (1948): "[T]he action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful." The court added in <u>Civil Rights Cases</u>, 109 U.S. 3 (1883): "It is State action of a particular character that is prohibited. Individual invasion of individual rights is not the subject matter of the amendment. It has a deeper and broader scope. It nullifies and makes void all State legislation, and State action of every kind, which impairs the privileges and immunities of citizens of the United States, or which injures them in life, liberty, or property without due process of law, or which denies to any of them the equal protection of the laws."

Since there are no pleadings to further expand his claim with specific enhancement on the facts and since the appearing defendants are private entities that did not act under color of state law, this court should dismissed with prejudice these claims against them.

### <u>Defendant Jorge Pérez Casellas.</u>

<u>Notarial Act of Puerto Rico and the Property Registry</u>

Article 2 of the Notarial Act of Puerto Rico states as follows:

"The notary is a legal professional who practices a public function, authorized to attest and authenticate pursuant to the laws the juridical business and other acts and extrajudicial events executed before him, without prejudice of what is provided in the special laws. His function is to receive and interpret the will of the parties giving it a legal format, draft the notarial documents and deeds for such purpose and confer authority to them. The notary's public faith is complete with regard to the facts carried out and corroborated by him in the exercise of his

functions, and also with regard to the manner, place, date and time of the execution."

See 4 L.P.R.A, § 2002.

In Feliciano v. Ross, 165 D.P.R. 649 (2005), the Supreme Court for the Commonwealth of Puerto Rico analyzed Article 2 of the Notarial Act and discussed in depth the responsibility of a Notary Public to the parties perfecting a transaction before him. In Feliciano, Plaintiff sued a Notary Public that had stated that a property was free and clear of all liens when in fact there was a property tax debt (not property lien) at the time of the sale. At the time, the Notary did not require a certification of CRIM (municipal tax office) property taxes; nevertheless he did require and examine a Title Search of the property. The title search did not show any liens upon the property. The Court concluded that the Notary was not responsible for reviewing CRIM taxes, and as such the Notary was not at fault.

The Court stated that the function of the Notary Public is of utmost importance for the stability of legal transactions. In re Rivera Vázquez, 155 D.P.R. 267, 277 (2001). For such reason, "the notarial public faith imposes upon the Notary Public the duty to be diligent in his endeavors and to comply with all formalities of the law when authorizing public deeds. Id. at p. 276. The Notary's Public faith is complete with respect to the facts in which, **in the exercise of his function**, he personally executes or attests and also with respect to the form, place, day and time where the public deed is perfected. In re Tejada Rivera I, 155 D.P.R. 175 (2001).

With respect to the minimum inquiries that a Notary Public must perform

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

prior to the execution of a  public deed, the Court states that "a Notary who authorizes a deed **cannot ignore the property registry status** of the property object of the public deed to be perfected.  Emphasis ours.  In fact, not reviewing a title search in preparation for preparing a deed would violate the public notarial faith. <u>Feliciano v. Ross</u>, supra at 660 citing <u>In re López Maldonado</u>, 130 D.P.R. 863, 865 (1992).  His obligation of knowing the property registry status in his prime function as a custodian of the public faith, essential foundation of  the notary system, is indeclinable.  As such, the Notary has the unavoidable duty of illustrating the parties so that they can  perfect the public deed dully informed. That is, the Notary has to make sure that he has given the parties all  necessary explanations, clarifications and warnings necessary to obtain an informed consent of the parties. <u>Feliciano v. Ross</u>, *supra* at 659; <u>In re Pizarro Colón</u>, 151 D.P.R. 94, 106 (2000); <u>In re Jiménez Brackel</u>, 148 D.P.R. 287 (1999).

Regarding compliance with the inherent duties of the Notary, the Court expressed, citing <u>Romero v. S.L.G. Reyes</u>, 164 D.P.R. 721 (2005), that "in the performance of his notarial task, the lawyer is bound  to comply with all duties arising from the law, the statutes of the Professional Ethics Code and the agreement between the parties. Non-observance of such duties exposes the Notary to a possible action  for the  damages caused to the client or to third parties, and to our corrective and disciplinary jurisdiction". <u>Feliciano v. Ross</u>, supra at 662.

The Supreme Court concluded that the Notary Public complied with the duties arising from law; that is, his obligation to at least confirm the property

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

registry status thru a title search. The  Court explains that the Notary was not hired to examine or attest the possible debts of the property within  the CRIM and that after confirming thru the Title Search that there were no liens against the property in the  Property Registry, the Notary complied with all his duties and was not responsible of the damages caused  to the Buyer. The Court goes on to state, that the responsible party was the seller **since the Notary public is  not a part of the contractual relationship of the parties.** Id. at page 663.  The Court concluded that the responsibility of informing the debt from the CRIM taxes fell exclusively upon the seller and not the notary, who is not a party of the referred contractual relationship." (Our translation and emphasis).

The  principles of  legality, publicity, and  specialty,  basis of  the Property Registry, demand a clear notice  and warning to a third party arising from the mere reading of  the entry or note entered in the books.  The regime would be seriously violated if  the interested party were imposed the obligation  of  questioning the qualification of  "curable" entered by  the  Registrar  and  starting  his  own investigation from  which  it could  appear  that the defect is "incurable"  and  the record void.  Caballero v. Registrar, 42 P.R.R. 614, 616 (1931), in a dictum of Judge Wolf. To reiterate this criteria now would be tantamount to denying the protection to a third party, which is the main nerve of our real estate law, and to let the latter protect  himself  with  inquiries  and  investigations.  Royal Bank of Canada v. Registrador,  104 D.P.R. 400 (1975), 4 P.R. Offic. Trans. 555.

The  principle of  legality is that which imposes that the titles sought to be

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

recorded in the  Registry of  Property, be submitted to a previous examination,

verification or qualification, so that  only valid and  perfect titles appear in the

mortgage books. *Id*. In a system where registry entries  are assumed or deemed to

be exact or concomitant with the  juridical reality, the existence of a pre-record

proceeding to clear out the titles presented for record is logical. *Id*.

   Section 2102 of  the Puerto Rico Mortgage Law ("PRLM"), P.R. St T. 30 §

2102  provides that "The Registrars shall issue literal, brief, partial or negative

certifications of  the different registry  entries upon a written request by anyone

stating an interest in ascertaining the legal status of any real  property or right in

question, or by virtue of  an order of  the court". Furthermore, Section 2105 of

PRLM, P.R. St T. 30 § 2105 provides that "Certifications issued by the Registrars

are public documents and, as such, may be considered evidence in their own right".

   On the other hand, the  purpose of  an abstract is to  inquire into the

background, liens and encumbrances of a  property. <u>Ramos-Meléndez v. Cabiya-
Ortiz</u>, 20 P.R. Offic. Trans. 835, 840 (1988). Under Puerto Rico law a notary is

required to secure a title abstract before proceeding to authorize a deed involving

a  real estate property. "This inquiry into the  background, as well as the

determination of  the liens  or  encumbrances to be done in the deed, are of

unquestionable importance." <u>Chévere v. Cátala</u>, 15 P.R. Offic. Trans. 572, 585-586

(1984).

   <u>The False Claims Act</u>

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

The False Claims Act is a piece of legislation which imposes liability on persons who defraud governmental programs and is codified in 31 U.S.C.S. §§ 3729-3733. The statute is targeted against those that make false claims for payment to the Federal Government. <u>United States</u> v <u>Mackby</u>, 339 F3d 1013 (9th Cir. 2003). The law seeks to protect the federal government's funds and property from fraudulent claims. <u>Rainwater v United States</u>, 356 US 590 (1958). This statute typically applies to government contractors, medical health providers, etc.

Section 3730 (31 U.S.C.S. § 3730) empowers the attorney general to investigate any possible violation of the law and to bring a private cause of action against the persons who allegedly infringed the law. It also allows private citizens to bring an action provided certain requirements and conditions are met. 31 U.S.C.S. 3730. This action is known as *qui tam* and allows the private enforcer to collect part of the proceeds of the case. 31 U.S.C.S. 3731(d).

Attorney Pérez has made no claims for payment to the Federal Government. As such, the FCA is wholly inapplicable to Attorney Pérez. Hence, the claim should be dismissed with prejudice.

<u>The Real Estate Settlement Procedures Act</u>

The purpose of RESPA is to provide consumers with more information about the costs of the settlement process and to protect them from high settlement and closing charges. 12 U.S.C. § 2601(a). According to 12 U.S.C. § 2601(b):

> It is the purpose of this Act to effect certain changes in the settlement process for residential real estate that will result-
>
> (1) in more effective advance disclosure to home buyers and

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

> sellers of settlement costs;
>
> (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services;
>
> (3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and
>
> (4) in significant reform and modernization of local recordkeeping of land title information.

According to 12 U.S.C. 2602(3) settlement services include "title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, among many others. The Act provides for certain mandatory disclosures itemizing the fees to be paid by a borrower and a seller as part of the settlement process. Regarding title insurance, 12 U.S.C. § 2603(a) requires the buyer be informed whether the premium charged covers the borrower, the lender or both. Lenders are obliged to distribute to all buyers and applicants of mortgage loans a booklet prepared by the Director of the Bureau of Consumer Financial Protection, explaining in plain language the settlement process. 12 U.S.C. § 2604.

The law also imposes upon lenders the obligation to inform mortgagors if the loan will be serviced by a third party and the duty of the loan servicer to quickly respond to borrower inquiries. 12 U.S.C. § 2605. The law prohibits kickbacks and unearned fees. 12 U.S.C. § 2607. It makes illegal for a seller to require as a condition of the sale of a property that title insurance be purchased from a particular insurer or agent. 12 U.S.C. § 2608. It also regulates escrow accounts, 12 U.S.C. §

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

2609 and prohibits charging fees for the preparation of truth-in-lending, uniform

settlement and   escrow statements, 12 U.S.C. § 2610.

Plaintiff does not allege in his *Amended Complaint* that he had any issues with

being provided costs of settlement services, or that he was taxed with high settlement

charges.  That in and of itself is sufficient do dismiss the claim.

Further, the *Amended Complaint* is completely devoid of any factual allegation

against Attorney Pérez which would constitute a violation of RESPA.  Plaintiff does

not mention any specific provision of RESPA against Attorney Pérez.  The only reason

for that is because RESPA is wholly inapplicable to Attorney Pérez.  The fact that

attorney services are included in RESPA, it does not create a cause of action against

the Attorney.  The costs of the attorney are handled by the bank and notified to the

buyer.  Certainty, this does not confer a cause of action against Pérez acting as Notary

Public in the Deed of Sale for the Property.

Supplemental Jurisdiction And Art. 1802 of the P.R. Civil Code

Given that FCA and RESPA are inapplicable to Pérez, the Court should

refrain from exercising Supplemental Jurisdiction.  It has been held that when all

federal claims are dismissed  federal courts should not exercise supplemental

jurisdiction over the state-law claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S.

343, 350 no.7, 108 S. Ct. 614 (1988); Castellano v. Bd. of Trustees, 937 F.2d 752,

758 (2d Cir.1991); Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir.2001);

Torres v House of Representatives of P.R., 2012 WL 1259098.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

In <u>Rodriguez v. Doral Mortgage Corp</u>., 57 F.3d 1168, 1177 (1st Cir. 1995),

the Court of Appeals for the First Circuit stated: As a general principle, the

unfavorable disposition of a plaintiff's federal claims at the early stages of a suit,

well before the commencement of trial, will trigger the dismissal without prejudice

of any supplemental state-law claims... But this praxis is not compelled by a lack

of judicial power. It signifies only that, in the usual case in which all federal law

claims are eliminated before trial, the balance of factors to be considered under the

pendent jurisdiction doctrine –judicial economy, convenience, fairness, and comity–

will point toward declining to exercise jurisdiction over the remaining state-law

claims. (Citations omitted). See also, <u>Redondo Constr. Corp. v. Izquierdo</u>, 662 F.3d

42, 49 (1st Cir. 2011). If "[i]f the federal claims are dismissed before trial ...the state

claims should be dismissed as well." <u>Gautier-Figueroa v. Bristol-Myers Squibb P.R.</u>,

845 F. Supp. 2D 444, 465 (D.P.R. 2012)2, citing <u>Redondo</u> 662 F.3d 42, at 49.

As such, the Court should decline to exercise supplemental jurisdiction over

plaintiff's state cause of action under Article 1802 of the Puerto Rico Civil Code.

Under Art. 1802 of the Civil Code, 31 L.P.R.A § 5141, whoever causes a

damage, either by act or omission, by fault or negligence, is obligated provide

restoration for the damages. Said precept provides that all material or moral damages

bear restitution if three (3) basic elements are present: (1) the presence of a physical

and emotional damage to the plaintiff; (2) that it arises from a guilty or negligent act

or omission of the defendant; (3) that a causal link exists between the act or omission

and the damage suffered. <u>Ramos Milano v. Wal-Mart Puerto Rico</u>, 168 D.P.R. 112

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

(2006); Santiago v. Sup. Grande, 166 D.P.R. 796 (2006); Mun. de San Juan v. Bosque

Real, S.E., 158 D.P.R. 743 (2003); Colón y otros v. K-mart y otros, 154 D.P.R. 510

(2001); Montalvo v. Cruz, 144 D.P.R. 148 (1998).

In cases where the alleged damages are due to an omission; a cause of action

will be configured when: (1) a duty to act exists and said duty is undermined; and (2)

had the omitted act been made the damages would have been avoided. Ramos Milano,

supra; Colón y otros, supra.; Administrador v. ANR, 163 D.P.R. 48 (2004); Elba

A.B.M. v. U.P.R., 125 D.P.R. 294 (1990). The Puerto Rico Supreme Court has decided

that the initial question in these cases is whether a "judicial duty to act existed on

behalf of the alleged party that caused the damage". Ramos Milano, supra; Arroyo

López v. E.L.A., 126 D.P.R. 682, 686-687 (1990).

The Supreme Court of Puerto Rico has on various occasions noted that "the

requirement of foreseeability is not limited to requiring that the precise risk or

consequences have been foreseen," explaining that "the essential [matter] is that

there be a duty to foresee in a general way the consequences of a determinate class

[of consequences]." Woods-Leber v. Hyatt Hotel Puerto Rico, Inc., 951 F.Supp 1028

(D.P.R.1996) citing Pabón– Escabí v. Axtmayer, 90 P.R. Dec. 20, 25   (1964) The

element of "reasonableness" is implicit in this passage, for even though in order to be

liable for negligence a person need not foresee the specific consequences that did, in

fact, result from a given act or omission, still, those specific consequences must fall

within the general class of consequences that in a normal person's experience flow

from such an act or omission. Brau del Toro, 1 Daños y Perjuicios Extracontractuales

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

at 184–185. Thus, the Supreme Court has stated that "[t]he lack of light in a stairwell, even if constitutes negligence imputable to the lessor, it is [negligence] in relation with the usual foreseeable risk of injury created by that type of dangerous condition, such as slipping and falling, or tripping up against an object on the floor," and therefore held that the lessor was not responsible for a mugging on that same stairwell. Estremera v. Inmobiliaria Rac, Inc., 109 P.R. Dec. 852, 857 (1980). To sum up, "[t]he norm of foreseeability is that the risk that must be foreseen must be based on probabilities and not on mere possibilities." Brau del Toro, 1 Daños y Perjuicios Extracontractuales at 185.

In our jurisdiction, adequate causation ("causalidad adecuada") is the governing doctrine. Ramos Milano, supra; Jiménez v. Pelegrina Espinet, 112 D.P.R. 700 (1982); Soc. de Gananciales v. Jerónimo Copr., 103 D.P.R. 127 (1974). Therefore, a damage could be considered a natural and probable result of a negligent act or omission, if after the event, and in retrospection, it seems to be a common and reasonable consequence of the act or omission in controversy. Santiago, supra; Administrador, supra.

In accordance with this doctrine, causation does not refer to any condition without which the result would not have occurred, but that which ordinarily produces it according to the general experience. Santiago, supra.; Arroyo López, supra; Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. 702 (1990). Thus, in order to determine the cause, plaintiff must prove that the omission by defendant was, in all probability, what caused the damage claimed by plaintiff. Ramos Milano, supra.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Additionally, under Puerto Rico Law, a plaintiff can be held liable after a determination that he/she incurred in negligence for the injury for which he/she now seeks compensation.  Quiñones López v. Manzano Pozas, 141 D.P.R. 139 (1996); Ramos Milano v. Wal-Mart, 168 D.P.R. 112 (2006).   Puerto Rico recognizes comparative negligence in tort actions, since Article 1802 specifically provides that the negligence of a plaintiff will not bar a tort caused claims but rather that the relief awarded shall be reduced proportional to the degree of plaintiff's [comparative] negligence.  Pons Anca v. Engebretson, 160 D.P.R. 347, 362 (2003).

In the present case, it is evident that Pérez Casellas complied with all his duties under the law and as such, the claims brought against him cannot survive. Pérez Casellas, in preparing the Deed of Sale, duly requested a title search and abstract from Capital Title.  He then properly identified the property in the Deed of Sale using the legal property description as provided by Capital Title.   This description matches the legal description of the Property Registry.  This is all he had to do to comply with his duties as Notary Public and the law.  A Notary Public has no obligation to visit the property, inspect it, or request any additional information.  To state otherwise would be misleading and false.  Plaintiff has no evidence whatsoever that Pérez Casellas did not adequately perform his duties as a Notary Public.  To the contrary, plaintiffs own documents attached to the Complaint prove Pérez Casellas acted in full compliance with the law, and within the scope of his duties as Notary. Further, Pérez did not violate FCA or RESPA, as they are inapplicable to him.  As such, the case against Pérez Casellas has no merit.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

## IV.    PROPOSED ADMITTED FACTS

### Plaintiff


### Defendant FirstBank

1.      Plaintiff decided to look for a property to buy at the end of the year 2012.

2.      Plaintiff was looking for a property in the Metropolitan Area, close by the Interamerican University that would require little fix up and that its value were under a hundred thousand dollars ($120,000).

3.      Plaintiff came up with the property at 238 Julio Vizcarrondo Street through the FirstBank website.  He was looking for repo properties in the Metro Area.

4.      Plaintiff had the opportunity to visit the property in several occasions before he decided to buy it.  He went with the real estate agent in at least two occasions to see the property and he went by himself.

5.      Plaintiff had the opportunity to see and tour the entire property.  He went room by room, the garage, the backyard, he went on to the roof, and he was even able to walk onto the roof of the property.

6.      The description of the property on the Deed of Construction of the year 2005 is essentially the same as the description of the property contained in the abstract prepared by Capital Title and the same in the entries of the Property Registry.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

7.     The description of the property purchased by Plaintiff contained in the Property Registry Certification does not state what the property is made of in any of its active entries, not even on the entry related to the Deed of Construction.

8.     The Deed of Sale was executed by Firstbank and Plaintiff Arturo Castro Guerra on April 30th, 2013.

9.     Pérez Casellas prepared the Deed of Sale utilizing an abstract (title search) prepared by Capital Title Services, Inc, dated February 28th, 2013, and specifically mentioned this fact to the parties in the Deed of Sale.

10.    The description of the property in the Deed of Sale and the abstract are identical.

11.    The description of the property in the Deed of Sale and the abstract, match the property description registered in the Property Registry.

12.    The description of the property in the Property Registry does **not** state what materials the house structure is made out of.

13.    On November 29th, 2005, Notary Public Francisco Díaz Herrero prepared a Deed of Construction ("Acta de Edificación") for the property object of the Amended Complaint which stated that the property contained a one story house made out wood and concrete, with a zinc roof.

14.    The Deed of Construction requested the Property Registry amend the legal description of the property to a new description which does not contain any mention of the materials the house is constructed out of.

15.    The Deed of Construction was filed at the Property Registry on

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

December 30th, 2005, and registered on January 24th, 2006.

16.    The legal description of the property entered by the Registrar matches the description requested be entered into the Property Registry in the Deed of Construction.

17.    Plaintiff took one Notary course and one Mortgage course in the year 2014 as part of the requisites to obtain his Juris Doctor while he attended Law School and he has at least a general knowledge about matters of law related to both subjects.

18.    When Plaintiff walked on top of the room he did not feel it to give in. In fact, he felt it solid.

19.    Plaintiff relied on an appraisal report made by Marlin Barreto on 09/07/2012 to make his decision to purchase the property. Plaintiff also relied on his onsite visits to the property.

20.    According to the appraisal report of Ms. Barreto, the value of the property was $80,000 and Plaintiff purchased the property for $55,000.

21.    According to Ms. Barreto's appraisal report, the description of the foundation of the property says concrete slab and the foundation walls as concrete and its condition as average. The report also mentions that there is evidence of infestation of termites in the property. As to the exterior description of the property, Ms. Barreto's appraisal report described the exterior walls as concrete and its condition as average. Regarding the roof it says "RC" (reinforced concrete) and that the condition is poor.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

22.     According to the Appraisal Report prepared by Marlin Barreto, the property has a concrete slab as a foundation; had a termite infestation; the foundation walls and exterior walls were of concrete and in average condition; the roof surface was reinforced concrete and in poor condition; and the garage area had water leakage.

23.     According to the appraisal report, the house had a wood roof area.

24.     The FHA inspector retained by Preferred Mortgage to inspect the condition of the property concluded that the property was structurally sound.

25.     Plaintiff signed a Purchase Option Contract on February 2013.

26.     FirstBank repossessed the property and it never occupied the same.

27.     According to the Purchase Option Contract, plaintiff was not allowed to place pad locks on the property prior to purchase. Plaintiff, however, installed a padlock on the property prior to purchase.

28.     According to the Purchase Option Contract, plaintiff acknowledged and agreed that FirstBank did not offer any warranties for hidden defects and/or deficiencies and waived any action or claim against FirstBank for any state in which the property, that is the object of the contract, may be in and expressly released FirstBank from any liability he may have in the property that is the object of the contract. Furthermore, plaintiff agreed and acknowledged that the price set for the property had been reduced and adjusted considering the state that it is in.

29.     Plaintiff stated and assured that he had inspected the property on his own or through his agents and representatives, finding the property completely

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

satisfactory; and that he executed the Purchase Option Contract  while fully aware of the conditions of the property ("as is, where is").

30.     Plaintiff agreed that the purchase of the property was performed in the current state and condition of the same, including any defects, hidden or apparent, and any deficiencies in the property, whether known or unknown, currently existing or that may show up in the future.

31.     It was agreed by plaintiff that FirstBank made no representations or guarantees whatsoever, expressly or implicitly, verbally or in writing, regarding the property, including, but not limited to: (a) the value, nature, <u>quality</u> or <u>conditions</u> of the property, including, but not limited to, the water, soil and geology thereof; (b) the income to be derived from the property; (c) the convenience of the property for any and all purposes, activities and uses that plaintiff may give the property; (d) the compliance of the property or its operation with any applicable laws, rules, ordinances or regulations of any government body or authority; (e) <u>the property's habitability</u>, marketability, merchantability or how apt or beneficial it is for a particular purpose; (f) <u>the manner or quality of the construction or the materials</u>, if any, incorporated into the property; (g) <u>the manner, quality, state of repair or lack of repair that the property is in</u>; (h) the existence of any view from the property or the possibility that any existing view will not be obstructed in the future; (i) any other matter related to the property; (j) <u>the structural integrity</u> of any improvements on the property; (k) the conformity of any improvements thereon to any plan or specifications for the property that may be provided to FirstBank; (l) the conformity of what is built on the property

78

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

to any applicable zoning requirements or the applicable construction code; (m) the existence of soil instability, past soil repairs, susceptibility to landslides, sufficiency of under-shoring, sufficiency of drainage, or any other matter affecting the stability or integrity of the land or any buildings or improvements situated thereon; or (n) whether the property is located in a special studies zone or flood hazard zone, or in the presence of wetlands or shoreland.

32.    Plaintiff intended to make some repairs to the property which consisted on removing the windows, the doors, the plumbing, upgrade the electricity, remove the "rejas" [iron fencing], upgrade the bathrooms, and the removal of termites.

33.    Co-defendant Preferred Mortgage retained the services of appraiser Mario Carbia to appraise the property in question. The appraisal revealed an estimate value of $104,000.00. Plaintiff also admitted that this appraisal report was "similar" with "pretty much the same details" as the appraisal report prepared by Marlin Barreto.

34.    Plaintiff acknowledges that it was not FirstBank who removed the nine (9) windows and two (2) doors stored at the property. Plaintiff states that it was the maintenance company contracted by FirstBank who removed these items and admitted to never making any claim to this maintenance company for the items.

35.    Plaintiff admits to having spent approximately $700-$800 for all the doors and windows.

36.    FirstBank did not require plaintiff to obtain title insurance. According to plaintiff, this was required by Preferred.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

37.     Plaintiff recognizes that FirstBank just sold the property to him and that it did not handle the financing or the title insurance.

38.     Plaintiff admits that neither Preferred nor FirstBank prepared or knew of any falsity when Preferred presented to HUD the information.

39.     Plaintiff only identifies Preferred Mortgage as responsible for misrepresenting to the Federal Government and for violating the False Claims Act.

40.     Plaintiff never visited FirstBank to inform them of the problems with the condition of the house.

### Defendant Preferred Mortgage

1.     Plaintiff, Arturo Castro Guerra ("Castro") has a Juris Doctor from the Interamerican University School of Law and he graduated in December 2014.

2.     Castro took one Notary course and one Mortgage course in the year 2014 as part of the requisites to obtain his Juris Doctor while he attended Law School and he has at least a general knowledge about matters of law related to both subjects.

3.     Castro is currently working as a Certified Public Accountant (CPA).

4.     Castro had the opportunity to visit the property object of this case on several occasions before he decided to purchase it.

5.     Castro went to see the property with the real estate agent in at least two occasions and he went again by himself.

6.     Castro relied on an appraisal report made by Marlin Barreto on 09/07/2012 and on his onsite visits to the property to make his decision to purchase the property.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

7.    According to the appraisal report of Marlin Barreto the value of the property was $80,000 and Castro purchased the property for $55,000, plus a loan for repairs.

8.    According to Marlin Barreto's appraisal report, the description of the foundation of the property indicates concrete slab and the foundation walls as concrete and its condition as average. The report also mentions that there is evidence of infestation of termites in the property.  As to the exterior description of the property, Marlin Barreto's appraisal report described the exterior walls as concrete and its condition as average.  Regarding the roof it says "RC" (reinforced concrete) and that the condition is poor.

9.    On April 1, 2015, Capital Title Services, Inc., prepared an abstract of the property object of this case (Title Search) at the request of Preferred Mortgage.

10.    The description of the property in the 2005 Deed of Construction (Acta de Edificación) is the same as the description of the property contained in the abstract prepared by Capital Title, and in the entries of the Puerto Rico Property Registry.

11.    The description of the property purchased by Castro contained in the Property Registry Certification does not indicate the type of material used to build the house in any of its active entries, not even on the entry related to the Deed of Construction (Acta de Edificación).

12.    In the process to apply for the mortgage loan with Preferred, Castro received and signed several documents. One of the documents signed by Castro prior to the closing, on February 25, 2013, is entitled "For Your Protection Get a Home

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Inspection".

13.     The closing of the loan to acquire the property by Castro from Firstbank occurred on April, 30, 2015.

14.     On April 30, 2013, Castro received and signed the "Truth in Lending Disclosure Statement" which disclosed to Castro: (a) the loan annual rate; (b) the finance charges; (c) the amount financed; (d) the total payments to be made; (e) the applicable interest rate; (f) the principal plus interest monthly payment; (g) the escrow amount, which includes the insurance and the taxes; and other itemized costs.

15.     At the loan closing date on April 30, 2015, as part of all documents signed, Castro received and signed a "Settlement Statement" which provided to him a detailed disclosure of all settlement charges, that is, notary fees, CRIM taxes (real property taxes) and insurance, among others.

16.     As part of the documents signed at the closing date on April 30, 2013, Castro received and signed a "Notice of Assignment, Sale or Transfer of Servicing Rights", notifying him that the servicer of the mortgage loan would be Banco Popular of Puerto Rico ("BPPR") and that he has made his monthly loan payments to BPPR.

17.     At the closing date on April 30, 2013, Firstbank and Castro, the latter a Certified Public Accountant and a law school graduate, signed a document entitled "Certifications", certifying that the information submitted to Preferred concerning the "mortgage loan application contains only true, accurate and complete information.

18.     At the closing date on April 30, 2013, Firstbank and Castro Puerto Rico

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

signed a document entitled "Certifications" stating among others the following:

> "**We have been oriented by Preferred Mortgage Corp. staff on the importance of conducting a physical inspection of the property prior to closing**. In addition we have been oriented on the availability of trained personnel to carry out the inspection at an additional cost. We have made efforts we believe necessary and we have determined that the property is in an acceptable condition for us. **We have decided to continue with the closing by accepting the property in its current state and relieve Preferred Mortgage Corp. of any responsibility for any damage, expense and disbursement related to any defects the property may have**." (Emphasis added)

19.    Preferred had no knowledge of the physical condition of the property.

## Defendants Capital Title Services and Title Security Group

1.    Plaintiff decided to look for a property to buy at the end of the year 2012.

2.    Plaintiff was looking for a property in the Metropolitan Area, close by the Interamerican University that would require little fix up and that its value were under a hundred thousand dollars ($120,000).

3.    Plaintiff came up with the property at 238 Julio Vizcarrondo Street through the FirstBank website.  He was looking for repo properties in the Metro Area.

4.    Plaintiff had the opportunity to visit the property in several occasions before he decided to buy it.  He went with the real estate agent in at least two occasions to see the property and he went by himself.

5.    Plaintiff had the opportunity to see and tour the entire property.  He went room by room, the garage, the backyard, he went on to the roof, and he was even able to walk onto the roof of the property.

6.    Defendant Capital Title Services, Inc. prepared an abstract (Title Search) on April 1, 2015 by request of codefendant Preferred Mortgage.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

7.     To prepare the abstract, the abstractor relied on the valid entries of the Property Registry, San Juan Section.

8.     The Abstract contains a waiver for any errors in the Registry entries.

9.     In the abstract, Capital Title Services, Inc. also states that their liability in connection with the title search (title report) is limited to only the amount paid for its preparation with respect to the client referred to in the heather of the report.

10.     The description of the property on the Deed of Construction of the year 2005 is essentially the same as the description of the property contained in the abstract prepared by Capital Title and the same in the entries of the Property Registry.

11.     The description of the property purchased by Plaintiff contained in the Property Registry Certification does not state what the property is made of in any of its active entries, not even on the entry related to the Deed of Construction

12.     The Title Insurance issued by Title Security Group, Inc. is in compliance with 12 U.S.C. § 2603(a) which requires the buyer be informed whether the premium charged covers the borrower, the lender or both.

### Defendant Jorge Pérez Casellas

1.     Mr. Jorge Pérez Casellas is an Attorney and Notary Public admitted to practice in the Commonwealth of Puerto Rico.

2.     Pérez Casellas was retained by Firstbank to prepare a Deed of Sale for the purchase and sale of a property between Firstbank, as seller, and Plaintiff Arturo Castro Guerra, as buyer.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

3.      The Deed of Sale was executed by Firstbank and Plaintiff Arturo Castro Guerra on April 30th, 2013.

4.      Pérez Casellas is not a party to the purchase and sale of the property, as he is not the buyer or seller

5.      Pérez Casellas prepared the Deed of Sale utilizing an abstract (title search) prepared by Capital Title Services, Inc, dated February 28th, 2013, and specifically mentioned this fact to the parties in the Deed of Sale.

6.      Pérez Casellas specifically warned the parties that the abstract was not prepared by him, that is was not title insurance, and that it only reflects the reality of the Property Registry at the time is was prepared

7.      Pérez Casellas specifically warned the parties that they could obtain a newer abstract, yet Firstbank and Plaintiff Castro Guerra opted not to do so.

8.      The description of the property in the Deed of Sale and the abstract are identical.

9.      The description of the property in the Deed of Sale and the abstract, match the property description registered in the Property Registry.

10.     The description of the property in the Property Registry does **not** state what materials the house structure is made out of.

11.     On November 29th, 2005, Notary Public Francisco Díaz Herrero prepared a Deed of Construction ("Acta de Edificación") for the property object of the Amended Complaint which stated that the property contained a one story house made out wood and concrete, with a zinc roof.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

12.    The Deed of Construction requested the Property Registry amend the legal description of the property to a new description which does not contain any mention of the materials the house is constructed out of.

13.    The Deed of Construction was filed at the Property Registry on December 30th, 2005, and registered on January 24th, 2006.

14.    The legal description of the property entered by the Registrar matches the description requested be entered into the Property Registry in the Deed of Construction.

## V.   CONTROVERTED FACTS AND CONTESTED ISSUES OF LAW

### Plaintiff

### Defendant FirstBank

1.    Whether Plaintiff can establish a cause of action against FirstBank under the Fourteenth Amendment and Equal Protection clauses of the United States Constitution, RESPA, the False Claims Act, the Truth in Lending Act, the Federal Home Loan Mortgage Corporation Act, and the Puerto Rico Constitution.

2.    Whether the Court should exercise supplemental jurisdiction and if it chooses to do so, if Plaintiff can establish a cause of action against defendants under Article 1802.

3.    Whether Plaintiff can prove the damages alleged in the Amended Complaint.

4.    Whether Plaintiff can establish any alleged misrepresentation, or negligence, in the part of FirstBank as seller of the property.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

5.     Whether Plaintiff can prove that FirstBank failed to disclose any deficiencies of the property object of the Amended Complaint.

6.     Whether Plaintiffs' alleged damages, if proven, were caused by the negligence of FirstBank or other defendants.

7.     If Plaintiff can establish a cause of action under Article 1802, the amount to be awarded in damages.

**Defendant Preferred Mortgage**

1.     Whether Plaintiff can establish a cause of action against Preferred under the following federal statutes:

  a.  The Truth in Lending Act ("TILA"), 15 U.S.C.A. §1601, *et seq.*;

  b.  The False Claim Act, 31 U.S.C.A. §3729, *et seq.*;

  c.  The Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C.A. § 2601 *et seq.*;

  d.  The Federal Home Loan Mortgage Corporation Act ("FHLMCA"), 12 U.S.C.A. § 1454, *et seq.*

2.     Whether the Court should exercise supplemental jurisdiction and if it chooses to do so, if Plaintiff can establish a cause of action against Preferred under Article 1802.

3.     Whether Plaintiff can prove the damages alleged in the Amended Complaint and their amount.

4.     Whether Plaintiffs' alleged damages, if proven, were caused by Preferred.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

## Defendants Capital Title Services and Title Security Group

1.      Whether Plaintiff can establish a cause of action against defendants Capital Title and Title Security under the Fourteenth Amendment and Equal Protection clauses of the United States Constitution, the False Claims Act, the Truth in Lending Act, the Federal Home Loan Mortgage Corporation Act, and the Puerto Rico Constitution.

2.      Whether the Court should exercise supplemental jurisdiction and if it chooses to do so, if Plaintiff can establish a cause of action against defendants under Article 1802.

3.      Whether Plaintiff can prove the damages alleged in the Amended Complaint.

4.      Whether Plaintiff can establish any alleged deficiency, or negligence, in the preparation of the title abstract by Capital Title.

5.      Whether Plaintiff can prove that Capital Title and Title Security misrepresented or provided a faulty title abstract.

6.      Whether Plaintiff can prove that Capital Title and Title Security failed to disclose any deficiencies of the property object of the Amended Complaint.

7.       Whether Plaintiffs' alleged damages, if proven, were caused by the negligence of Capital Title and Title Security or other defendants.

8.      If Plaintiffs can establish a cause of action under Article 1802, the amount to be awarded in damages.

## Defendant Jorge Pérez Casellas.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

1.      Whether Plaintiff can establish a cause of action against Pérez Casellas under the Fourteenth Amendment and Equal Protection clauses of the United States Constitution, the False Claims Act, the Truth in Lending Act, the Federal Home Loan Mortgage Corporation Act, and the Puerto Rico Constitution.

2.      Whether the Court should exercise supplemental jurisdiction and if it chooses to do so, if Plaintiff can establish a cause of action against defendants under Article 1802.

3.      Whether Plaintiff can prove the damages alleged in the Amended Complaint.

4.      Whether Plaintiff can establish any alleged deficiency, or negligence, in the preparation of the Deed of Sale by Pérez Casellas.

5.      Whether Plaintiff can prove that Pérez Casellas misrepresented or failed to provide full disclosure of facts in the Deed of Sale.

6.      Whether Plaintiff can prove that Pérez Casellas failed to detect any deficiencies of the property object of the Complaint.

7.      Whether Plaintiffs' alleged damages, if proven, were caused by the negligence of Pérez Casellas or other defendants.

8.      If Plaintiffs can establish a cause of action under Article 1802, the amount to be awarded in damages.

## VI.   WITNESSES

### Plaintiff

### Defendant FirstBank

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

1.      Zaida Rentas – FirstBank representative. This witness is likely to testify as to the events and facts alleged in Plaintiff's Amended Complaint and FirstBank's role as seller of the property.

2.      Adalberto Navarro – former employee of FirstBank. This witness is likely to testify as to the events and facts alleged in Plaintiff's Amended Complaint and FirstBank's role as seller of the property.

3.      Roberto Rivera – Sky Realty. This witness is likely to testify as to the events regarding the showing of the property to the plaintiff.

4.      María Martínez – MC Management. This witness is likely to testify as to the events alleged in Plaintiff's Amended Complaint regarding the stored windows and doors which were removed by this company.

5.      Marlin Barreto – Appraiser. This witness is likely to testify as to the appraisal made on the property dated September 7, 2012 and as to the visual conditions and state of the property at the time of appraisal.

Defendant FirstBank reserves the right to call any witnesses in their case-in-chief identified by any other party including plaintiff himself. FirstBank reserves the right to supplement this list with the Court's approval. FirstBank reserves the right to call any witnesses for impeachment, rebuttal, or other purposes as permitted by the Federal Rules of Civil Procedure or the Federal Rules of Evidence.  FirstBank reserves the right to use any deposition testimony for any individuals identified herein which become unavailable to testify at trial.  FirstBank reserves the right to not call any witnesses identified

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

herein without an adverse inference at trial.

## Defendant Preferred Mortgage

1.      Arlene Ortiz, Loan Originator - Will testify about the loan origination process, communications with plaintiff throughout the process, the closing of the loan and Preferred's compliance with all applicable rules and regulations.

2.      Rosa Delgado, Underwriter - Will testify about the underwriting process, the loan documents analyzed, and recommendations to credit committee.

3.      Loida Rivera, Closing Official - Will testify about the loan closing process, the documents delivered, discussed and signed by plaintiff.

Preferred reserves the right to call any witnesses in their case-in-chief identified by any other party including plaintiff himself.  Preferred reserves the right to supplement this list with the Court's approval.  Preferred reserves the right to call any witnesses for impeachment, rebuttal, or other purposes as permitted by the Federal Rules of Civil Procedure or the Federal Rules of Evidence.  Preferred reserves the right to use any deposition testimony for any individuals identified herein which become unavailable to testify at trial.  Preferred reserves the right to not call any witnesses identified herein without an adverse inference at trial.

## Defendants Capital Title Services and Title Security Group

1. Ivette Rosario - Title abstractor.  Ivette Rosario will testify as to the facts of the case, including but not limited to the title abstract and how it was prepared, her review of the entries of the Property Registry and her professional experience as Title Abstractor.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Defendants Capital Title and Title Security reserve their right to call any witnesses in their case-in-chief identified by any other party. Capital Title and Title Security reserve the right to supplement this list with the Court's approval. Capital Title and Title Security reserve the right to call any witnesses for impeachment, rebuttal, or other purposes as permitted by the Federal Rules of Civil Procedure or the Federal Rules of Evidence. Capital Title and Title Security reserve the right to use any deposition testimony for any individuals identified herein which become unavailable to testify at trial. Capital Title and Title Security reserves the right to not call any witnesses identified herein without an adverse inference at trial.

## Defendant Jorge Pérez Casellas

A.  Jorge Pérez Casellas, Esq. – Mr. Pérez Casellas will testify as to the facts of the case, including but not limited to his preparation of the Deed of Sale for the property object of the Complaint, his review of the title abstract prepared by Capital Title, the execution of the Deed of Sale by Plaintiff and Firstbank, and the contents, clauses, and conditions of the Deed of Sale. Pérez Casellas will also testify as to his role and duties as a Notary Public in the Commonwealth of Puerto Rico, and full compliance with the same. He will also testify as to his professional experience as Notary Public. Further, Pérez Casellas will also testify as to how the Property Registry in Puerto Rico operates its function, purpose, and data available for review by parties.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Pérez Casellas reserves the right to call any witnesses in their case-in-chief identified by any other party. Pérez Casellas reserves the right to supplement this list with the Court's approval. Pérez Casellas reserves the right to call any witnesses for impeachment, rebuttal, or other purposes as permitted by the Federal Rules of Civil Procedure or the Federal Rules of Evidence. Pérez Casellas reserves the right to use any deposition testimony for any individuals identified herein which become unavailable to testify at trial. Pérez Casellas reserves the right to not call any witnesses identified herein without an adverse inference at trial.

## VII. DOCUMENTARY EVIDENCE

### Plaintiff

### Defendant FirstBank

1. Deed of Sale No. 19 dated April 30, 2013.

2. Appraisal report dated September 30, 2005.

3. Deed of Edification No. 78 dated November 29, 2005.

4. Purchase option contract between FirstBank and Plaintiff.

5. Property Registry Certification dated March 5, 2014.

6. Deed of Sale No. 18 dated July 30, 1968.

7. Title Search and Abstract dated November 9, 2005.

8. Title Search and Abstract dated October 10, 2005.

9. Title Search and Abstract dated December 14, 2005.

10. Segregation and Sale Deed No. 23 dated April 15, 1997.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

11. Sale Deed No. 24 dated April 15, 1997.

12. Sale Deed No. 475 dated December 16, 2005.

13. Appraisal report dated September 7, 2012.

14. Title Search and Abstract dated March 8, 2013.

15. String of emails between Plaintiff and FirstBank employees dated May 3 – May 7, 2013.

16. Plaintiff's offer for the purchase of the property dated February 5, 2013.

Defendant FirstBank reserves the right to amend its documentary evidence list in accordance with Federal Rules of Evidence and Federal Rules of Civil Procedure.  Further, FirstBank reserves the right to use the documentary evidence announced by the other parties as well as the documentary evidence attached to its Motion for Summary Judgment and those provided with the Initial Disclosures.

## Defendant Preferred Mortgage

Loan application, closing documents and forms, information and documents provided by Castro and the other parties in this case for the loan process and closing, and communications of Castro with Preferred, including but not limited to the following:

1. Conversation Log dated 3/21/2013

2. Email sent by Coco Carbia to Arlene Mrosek, Rosa Delgado, Eileen Rosario, Nery González, Arlene Ortíz Re: Photos of Property located at Villa Palmeras

3. Preferred Mortgage – Approval and Final Analysis dated 4/11/2013

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

4. Title Search request to Capital Title dated 2/25/2013 Re: Property #41,525

5. Flood One Service Request Form dated 2/25/2013

6. Measurement Sketch Request dated 3/25/2013

7. Request for Verification of Deposit

8. Authorization to Preferred Mortgage Corp. signed by Arturo Castro Guerra

9. Request for Certification of Debt and Assets of Real State Property

10. Uniform Residential Loan Applications by Castro

11. Financial documents submitted by plaintiff to Preferred in the loan application process.

12. Settlement Statement (HUD-1) dated 4/16/2013

13. Truth in Lending Disclosure Statement dated 4/10/2013

14. Title Search of Property #41,525 issued by Capital Title dated 4/1/2013

15. Value Certificate issued by CRIM dated 2-26-2013

16. Statement of Account issued by CRIM dated 2/26/2013

17. Engineering Survey / Plot Plan of Property 283 Julio Vizcarrondo issued by Eng. Hector A, Rivera dated 3/1/2013

18. Preferred Mortgage Continuation Sheet/Residential Loan Application dated 2/13/2013

19. HUD/VA Addendum to Uniform Loan Application

20. Curriculum Vitae of Arturo Castro Guerra, CPA

21. Request for Real State Property transfer filed at CRIM on April 30, 2013

22. Loan Policy of Title Insurance issued by First American Title Insurance

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

23. Letter by Preferred Mortgage dated May 13, 2013 to Arturo Castro Guerra Re: Loan transfer to Banco Popular of Puerto Rico

24. Preferred Mortgage Corp. Loans activation sheet

25. Search Results of System for Award Management of Firstbank of PR and Ezequiel Vaello as negative dated 4/30/2015

26. Department of Homeland Security Standard Flood Hazard Determination Form dated 2/26/2013

27. Treasury Department of PR Report Re: Real State Property Special Tax Retention Report as Negative dated 3/2011

28. Letter from Firstbank of PR to Arturo Castro Guerra Re: REO 2783 dated April 23, 2013

29. Value Certificate issued by CRIM dated April 16, 2013 Re: 283 Julio Vizcarrondo Property

30. Report issued by State Department Re: Individual Professional Search Report

31. Preferred Mortgage Corp. Summary of Documents Requested as received

32. Transmittal Letter Re: Documents submitted to Preferred Mortgage, Corp.

33. Emails thread between Ney Gonzalez and Arturo Castro Re: Repairs to Property No. 283 Julio Vizcarrondo St. from 3/12/2013 thru 9/3/2013

34. Truth in Lending Disclosure Statements signed by Arturo Castro on 2/25/2013 Re: Loan 13-5444

35. Truth in Lending Disclosure Statements signed by Arturo Castro

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

36. Truth in Lending Disclosure Statement Documents signed by Arturo Castro on 4/30/2013 Re: Loan 13-5444

37. Service Notification dated 2/25/2013 Re: Mortgage Loan Applicants

38. Mortgage Customer Identification Form dated 3/7/2013

39. Agreement for Payment of Contributions and Liability Waiver signed by Arturo Castro on 4/30/2013

40. Agreement between Arturo Castro and Firstbank PR Re: Property Tax Debt Responsibility signed on 4/30/2013

41. Notice from US Department of Housing Re: Home Inspection signed by Arturo Castro as acknowledged on 2/25/2013

42. FHA Connection Mortgage Insurance Certificate Re: Property #283 Julio Vizcarrondo St.

43. First Payment Letter Re: Loan 13-5444 Re: Payment due date 6/30/2013

44. Occupancy Statement signed by Arturo Castro on 4/30/2013

45. Notice to Mortgagor at Loan Closing

46. 203 (k) and Streamlined (k) Maximum Mortgage Sheet

47. Notice of Warning regarding the risks of lead for the houses painted before year 1978 signed by Arturo Castro on 2/22/2013

48. Letter from Firstbank PR to Arturo Castro dated 4/5/2013 Re: Contract Extension of REO 2783

49. Sales Contract between Castro and Firstbank signed on 2/22/2013 Re: Property 283 Julio Vizcarrondo St.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

50. Option Contract between Castro and Firstbank

51. Federal Housing Administration Certificate of Contract of Purchase Re: Property FHA 501-8650213-702

52. Cover letter, Important Notice to Buyers, Conditional Commitment and Appraisal Report for Property 283 Julio Vizcarrondo St. prepared by Mario Carbia & Associates dated 3/15/2013

53. Letter dated 3/25/2013 sent by Preferred Mortgage to Arturo Castro Re: Request of Estimate for Improvements to Property

54. Letter dated 2/27/2013 sent by Preferred Mortgage to Arturo Castro Re: Request of Documents to complete the process of Mortgage Loan Approval

55. FHA Connection CAIVRS Authorization as successfully completed

56. US Department of Housing ,Limited Denial of Participation, HUD Funding Disqualifications and Voluntary Abstentions

57. FHA Case Number 501--8650213 report dated 2/26/2013

58. US Department of Housing – Good Faith Estimate dated 4/22/2013

59. US Department of Housing – Good Faith Estimates

60. Truth in Lending Disclosure Statement Documents signed by Arturo Castro on 4/5/2013 Re: Loan 13-5444

61. Closing Cost Worksheet 4/05/2013

62. Closing Cost Worksheet 2/25/2013

63. Closing Cost Worksheets

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

64. Letter dated 2/25/2013 from Preferred Mortgage to Arturo Castro Re: Title Insurance

65. List of Providers submitted by Preferred Mortgage

66. Certification of Closing Costs signed by Arturo Castro on 2/25/2013

67. Letter dated 2/25/2013 sent by Preferred Mortgage to Arturo Castro Re: Acknowledgement of Receipt of Documents

68. Identity Validation of Arturo Castro Guerra

69. Notice of Right to Receive a Copy of Appraisal dated 2/25/2013

70. Notice of Right to Receive a Copy of Appraisal dated 2/25/2013

71. Privacy Notice dated 2/25/2013 signed by Arturo Castro as acknowledged

72. Notice to Purchasers of the importance of a home inspection signed by Arturo Castro on 2/25/13

73. Authorization to Disclose information signed by Arturo Castro on 2/25/2013

74. Interest Rate and Discount Disclosure Statement signed by Arturo Castro on 2/25/2013

75. Request for Copy of Tax Form signed by Arturo Castro on 2/25/2013

76. Borrower's Identity of Interest Certification signed by Arturo Castro on 2/25/2013

77. Loan Option Disclosure with Anti-Steering Safe Harbor Table signed by Arturo Castro on 2/25/2013

78. Deed of Edification No. 78 dated November 29, 2005.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

79. Title Study Search prepared by Capital Title Services, Inc. dated February 28th, 2013.

80. Certification by Property Registry of parcel No. 41525.

Preferred reserves the right to amend its documentary evidence list in accordance with Federal Rules of Evidence and Federal Rules of Civil Procedure. Preferred reserves the right to use the documentary evidence announced by the other parties as well as the documentary evidence attached to its Motion for Summary Judgment and those provided with the Initial Disclosures.

## Defendants Capital Title Services and Title Security Group

1.   Title Study Search prepared by Capital Title Services, Inc. dated February 28th, 2013.

2.   Certification by Property Registry of parcel No. 41525.

3.   Title Insurance issued by Title Security Group, Inc.

4.   Settlement Statement (HUD-1)

Defendants Capital Title and Title Security reserve the right to amend its documentary evidence list in accordance with Federal Rules of Evidence and Federal Rules of Civil Procedure. Further, Capital Title and Title Security reserve the right to use the documentary evidence announced by the other parties as well as the documentary evidence attached to the motions for Summary Judgment and those provided with the initial disclosures.

## Defendant Jorge Pérez Casellas

1.  Deed of Sale No. 19 dated April 30th, 2013 before Notary Pérez Casellas.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

2. Title Study Search prepared by Capital Title Services, Inc. dated February 28th, 2013.

3. Certification by Property Registry of parcel No. 41525.

4. Deed of Construction ("Acta de Edificación") dated November 29th, 2005, prepared by Notary Public Francisco Díaz Herrero.

Pérez Casellas reserves the right to amend its documentary evidence list in accordance with Federal Rules of Evidence and Federal Rules of Civil Procedure. Further, Pérez Casellas reserves the right to use the documentary evidence announced by the other parties as well as the documentary evidence attached to its Motion for Summary Judgment.

## VIII.  DEPOSITIONS

### Plaintiff

### Defendant FirstBank

Defendant FirstBank reserves its right to use the transcript of all depositions taken in the present case in any way allowed by the Federal Rules of Civil Procedure, the Federal Rules of Evidence and the Local Rules.

### Defendant Preferred Mortgage

Preferred reserves the right to use the transcript of all depositions taken in the present case in any way allowed by the Federal Rules of Civil Procedure, the Federal Rules of Evidence and the Local Rules.

### Defendants Capital Title Services and Title Security Group

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Defendants Capital Title and Title Security reserve their right to use the transcript of all depositions taken in the present case in any way allowed by the Federal Rules of Civil Procedure, the Federal Rules of Evidence and the Local Rules.

### Defendant Jorge Pérez Casellas

Pérez Casellas reserves the right to use the transcript of all depositions taken in the present case in any way allowed by the Federal Rules of Civil Procedure, the Federal Rules of Evidence and the Local Rules.

## IX.  EXPERT WITNESSES

### Plaintiff

### Defendant FirstBank

1. FirstBank will not use an expert witness at this time.  However, it reserves its right to name an expert witness should the Court allow Plaintiff to use an expert witness at this late stage of the proceedings.

2. FirstBank objects to Plaintiff's use of any expert witness who has failed to render expert reports pursuant to Rule 26(a)(2)(B).

### Defendant Preferred Mortgage

1. Preferred will not use an expert witness at this time.  However, it reserves its right to name an expert witness should the Court allow Plaintiff to use an expert witness at this late stage of the proceedings.

2. Preferred objects to Plaintiff's use of any expert witness who has failed to render expert reports pursuant to Rule 26(a)(2)(B).

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

### Defendants Capital Title Services and Title Security Group

1. Defendants Capital Title and Title Security will not use an expert witness at this time. However, they reserve their right to name an expert witness should the Court allow Plaintiff to use an expert witness at this late stage of the proceedings.

2. Defendants Capital Title and Title Security object to Plaintiff's use of any expert witness who has failed to render expert reports pursuant to Rule 26(a)(2)(B).

### Defendant Jorge Pérez Casellas

A. Pérez Casellas will not use an expert witness at this time. However, it reserves the right to name an expert witness should the Court allow Plaintiff to use an expert witness at this late stage of the proceedings.

B. Pérez Casellas objects to Plaintiff's use of any expert witness who has failed to render expert reports pursuant to Rule 26(a)(2)(B).

## XI.   CLAIMS OR DEFENSES WAIVED

### Plaintiff

### Defendant FirstBank

FirstBank has not waived any claims or defenses. FirstBank reserves its right to file any motions in limine with respect to witnesses or documentary evidence identified herein by other parties. FirstBank objects to Plaintiffs use of any witness not previously announced and any expert witness who have failed to render expert reports pursuant to Rule 26(a)(2)(B).

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

### Defendant Preferred Mortgage

Preferred has not waived any claims or defenses.  Preferred reserves the right to file any motions in limine with respect to witnesses or documentary evidence identified herein by other parties. Preferred also objects to the use of any witnesses not timely disclosed by any of the other parties.

### Defendants Capital Title Services and Title Security Group

Defendants Capital Title and Title Security have not waived any claims or defenses. They reserve their right to file any motions in limine with respect to witnesses or documentary evidence identified herein by other parties.  Defendants Capital Title and Title Security object to Plaintiffs use of any witness not previously announced and any expert witness who have failed to render expert reports pursuant to Rule 26(a)(2)(B).

### Defendant Jorge Pérez Casellas

Pérez Casellas has not waived any claims or defenses.  Pérez Casellas reserves the right to file any motions in limine with respect to witnesses or documentary evidence identified herein by other parties.  Pérez Casellas objects to Plaintiffs use of any expert witness who have failed to render expert reports pursuant to Rule 26(a)(2)(B).

## XII.   ESTIMATED LENGTH OF TRIAL

### Plaintiff

### Defendant FirstBank

FirstBank estimates the length of trial to be 5 days.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

### Defendant Preferred Mortgage

5 days

### Defendants Capital Title Services and Title Security Group

Defendants Capital Title and Title Security estimate the length of trial to be 5

days.

### Defendant Jorge Pérez Casellas

Pérez Casellas estimates the length of trial to be 3 days.

## XV. PENDING MOTIONS

### Plaintiff

### Defendant FirstBank

The following motions are currently pending resolution from the Honorable

Court as it pertains to FirstBank:

1. Docket 74 – Motion to Strike Belatedly Disclosed Witnesses filed by all
   defendants.

2. Docket 76 – Plaintiff's Motion to Compel.

3. Docket 78 – FirstBank's Opposition to Motion to Compel.

4. Docket 83 – Plaintiff's Opposition to Motion to Strike Belatedly
   Disclosed Witnesses filed by all defendants.

5. Docket 89 – FirstBank's Motion for Summary Judgment.

### Defendant Preferred Mortgage

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

As to Preferred specifically, the following dispositive motions are pending. There are other procedural motions pending filed jointly by defendants, as identified by the other parties in this report.

1. Docket No. 21 – Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(B)(6) of the Federal Rules of Civil Procedure, filed August 6, 2014

2. Docket No. 28 - Response in Opposition to Co-defendant Preferred's Motion to Dismiss Amended Complaint filed August 20, 2014 by Plaintiff.

3. Docket No. 44 - Reply to Opposition Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(B)(6) of the Federal Rules of Civil Procedure filed September 2, 2014.

4. Docket No. 92 - Motion for Summary Judgment and Memorandum of Law in Support filed November 30, 2015.

## Defendants Capital Title Services and Title Security Group

6. Docket 23 – Capital Title and Title Security's Motion to Dismiss Amended Complaint.

7. Docket 33 – Plaintiff's Opposition to Capital Title and Title Security's Motion to Dismiss.

8. Docket 52 – Capital Title and Title Security's Reply to Plaintiff's Opposition to Capital Title and Title Security's Motion to Dismiss.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

9.  Docket 74 – Motion to Strike Belatedly Disclosed Witnesses filed by all
    defendants.

10. Docket 83 – Plaintiff's Opposition to Motion to Strike Belatedly
    Disclosed Witnesses filed by all defendants.

11. Docket 79 – Capital Title and Title Security's Motion for Summary
    Judgment.

12. Docket 80 – Motion for Leave to File Spanish Language Documents in
    connection with Motion for Summary Judgment.

13. Docket 87 – Plaintiff's Opposition to Capital Title and Title Security's
    Motion for Summary Judgment.

14. Docket 94 – Capital Title and Title Security's Motion for Leave to File
    Reply and tendered Reply to Plaintiff's Opposition to Capital Title and
    Title Security's Motion for Summary Judgment.

Defendants Capital Title and Title Security reserve their right to file any
motions *in limine* pursuant to the Federal Rules of Civil Procedure.

## Defendant Jorge Pérez Casellas

The following motions are currently pending resolution from the Honorable
Court as it pertains to Pérez Casellas:

1.  Docket 25 – Pérez Casellas's Motion to Dismiss.

2.  Docket 29 – Plaintiff's Opposition to Perez Casellas's Motion to Dismiss

3.  Docket 31 – Pérez Casellas's Motion for Leave to File Reply and tendered
    Reply to Plaintiff's Opposition to Pérez Casellas's Motion to Dismiss.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

4.    Docket 74 – Motion to Strike Belatedly Disclosed Witnesses filed by all

defendants.

5.    Docket 83 – Plaintiff's Opposition to Motion to Strike Belatedly

Disclosed Witnesses filed by all defendants.

6.    Docket 90 – Pérez Casellas's Motion for Summary Judgment.

7.    Docket 91 – Motion for Leave to File Spanish Language Documents in

connection with Motion for Summary Judgment.

Pérez Casellas reserves the right to file any motions in limine pursuant to the

Federal Rules of Civil Procedure.

## XVI. OTHER MATTERS

### Plaintiff

### Defendant FirstBank

None

### Defendant Preferred Mortgage

All parties communicated among themselves as to the filing of the present

report on the dated ordered by the Court. Plaintiff's counsel did not answer requests

to join in this report nor did any notification was received from counsel explaining

the failure to provide plaintiff's sections. Therefore, in compliance with the Court's

scheduling order, Preferred is filing the present report without the benefit of

plaintiff's theory, evidence or witnesses. Therefore, Preferred reserves the right to

amend the present report in the event the Court allows plaintiff to file its part of the

pretrial report.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

### Defendants Capital Title Services and Title Security Group

None

### Defendant Jorge Pérez Casellas

Since the filing of the original Complaint, Pérez Casellas has requested that plaintiff voluntarily dismiss its claims against him and has provided Plaintiff with all necessary information and evidence for it to make an informed decision on dismissal.  As such, Pérez Casellas hereby certifies that the possibility of settling the case, by way of plaintiffs voluntary dismissal, was fully explored.

Although having clear evidence in the Exhibits of the Complaint that the registered legal description of the  property did not state that the same was made out of wood and zinc, Plaintiff has been obstinate and  has re-stated its allegations against Pérez in its *Amended Complaint*. Furthermore, Plaintiff has alleged that Pérez Casellas "reverted"  to an older legal description of the Property in the Public Deed, something which is contradicted by the documents included as Exhibits in the *Complaint* and the *Amended Complaint*.  A simple reading of the same confirms this fact.

By maintaining a cause of action against Pérez, as Notary Public, who is not a part of the  legal transaction in itself and whose compliance with the Notary law is clearly evidenced by the documents attached to Plaintiff's own claim, the Plaintiff is "wasting time and causing the court and the other litigant's unnecessary expense and delay." Correa v. Cruisers, a Div. of KCS Int'l, Inc., 298 F.3d 13, 30 (1st Cir.2002).  Most recently, in Sanchez v. Esso Standard Oil de Puerto Rico, Inc., 2010

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

WL 3809990 (D.P.R. Sept. 29, 2010), the Court imposed Rule 11 sanctions, and recoupment of attorney's fees against Plaintiff <u>and</u> its attorney for pursuing a frivolous and unwarranted claim where Plaintiff and its attorney knew that they could not sustain their causes of action, yet forcing defendants into litigation and undue expenses.

The implications of the present claim against the appearing Notary have been explained through several communications to Plaintiff's attorney. Pérez has also explained all the legal statutes to Plaintiff and has requested a voluntary dismissal to no avail.

At present, Pérez Casellas is awaiting to attain reciprocity to the Illinois bar. The present claim may impede such act, impeding a career move and his opportunity to practice law. Pérez Casellas is already residing in Illinois.

The law is clear upon the responsibility of a Notary Public in circumstances such as this, and the evidence included by the Plaintiff as part of his *Amended Complaint* shows that Pérez acted according to the law and that he fulfilled all of his duties imposed by the Notarial Law. Hence, attorney fees should be awarded to the appearing Defendant for having to defend himself against a meritless claim.

**RESPECTFULLY SUBMITTED.**

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

In San Juan, Puerto Rico, this 11th day of December, 2015.

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

**SALDAÑA, CARVAJAL &
VÉLEZ-RIVÉ, P.S.C.**
*Counsel for Defendant Jorge Pérez
Casellas, Esq.*
Ave. De la Constitución 166
San Juan, PR 00901
Tel. (787) 289-9250
Fax. (787) 289-9253
E-Mail pquinones@scvrlaw.com


s/ *Pedro Quiñones Suárez*
Pedro Quiñones Suárez
Bar Number: 227207


**Rivera-Munich, Eliza & Hernández Law
Offices, P.S.C.**
*Attorneys for Capital Title Services, Inc.
and Title Security Group, Inc.*
P.O. Box 364908
San Juan, PR  00936-4908
Tel. 787-622-2323
Fax. 787-622-2320

**S/ Julio Nigaglioni Arrache**
Julio Nigaglioni Arrache
USDC 204212
jnigaglioni@rmmelaw.com

**S/Áurea Y. Rivera-Alvarado**
Áurea Y. Rivera Alvarado
USDC-PR No. 230209
arivera@rmmelaw.com




**LEDESMA, VARGAS & VILLARRUBIA, PSC**
Counsel for defendant FirstBank
Francis Rodriguez Cardona
P.O. Box 194089
San Juan, Puerto Rico 00919

Joint Proposed Pre Trial Order
Civil No. 14-1280 (SEC)

Tel 787-296-9500

S/*Francis Rodriguez Cardona*
USDC-PR No. 228705
Email: frodriguez@lvvlaw.com

**FERRAIUOLI LLC**
Attorneys for Preferred
P.O. Box 195168
San Juan, P.R. 00918-5168
Phone 787.766.7000
Fax 787.766.7001

S/*Jenyfer García-Soto*
USDC-PR No. 222209
jgarcia@ferraiuoli.com

S/*Luis G. Parrilla Hernández*
USDC-PR No. 225805
lparrilla@ferraiuoli.com